**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SAURAV SHARMA, DIANE YOUNG, JAIME STIEVE, and GEORGE DEAN, On Behalf of Themselves and All Others Similarly Situated, | § | |
| | § | CASE NO. 5:24-cv-00206-FB |
| Plaintiffs, | § | |
| v. | § | |
| VISIONWORKS OF AMERICA, INC., | § | |
| Defendant. | § | |

**DEFENDANT VISIONWORKS OF AMERICA, INC.'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT**

Defendant, Visionworks of America, Inc. ("Defendant"), respectfully moves this Honorable Court to dismiss Plaintiffs' Class Action Complaint (the "Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and shows the Court the following:

## I. INTRODUCTION AND BACKGROUND

This case is one of many recently filed across the country where plaintiffs attempt to shoehorn the use of marketing analytics tools on websites into purported legal violations under novel theories, including federal and state wiretapping statutes. In this particular iteration, Plaintiffs Saurav Sharma, Diane Young, Jaime Stieve, and George Dean (collectively, "Plaintiffs") filed a six-count putative class action against Defendant seeking injunctive relief and damages for the alleged interception, collection and disclosure of their Protected Health Information ("PHI"). The crux of the Complaint alleges that Meta (also known as Facebook) intercepted Plaintiffs' communications through Defendant's public-facing unauthenticated website,

www.visionworks.com (the "Website"), by way of its Pixel technology ("Meta Pixel") without Plaintiffs' consent.

Plaintiffs allege that they attempted to schedule appointments, browsed "sensitive health-related articles" and "products" by typing queries into the Website's search function (the "Search Bar"). Compl. at ¶¶ 1-2. Although any allegations that Meta intercepted individualized information relating to *their own* specific treatment or health conditions, or details about appointments *they* made are conspicuously absent, Plaintiffs nevertheless contend that these communications contained PHI, as defined by the Health Insurance Portability and Accountability Act ("HIPAA"). *Id.* at ¶¶ 4-5, 64-67. The Complaint further alleges that Meta Pixel intercepted these communications to analyze the collected information for marketing purposes. *Id*. at ¶¶ 8-9, 23, 68-75.

Based on the foregoing, Plaintiffs claim violations of federal and state wiretapping statutes. Count I alleges violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*. ("Federal Wiretap Act"); Count II alleges violations of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5701, *et seq*. ("WESCA"); and Count III alleges violations of the Texas Criminal Wiretap Act ("Texas Wiretap Act"), Texas Code Of Criminal Procedure, Article 18A.502(1) and Texas Penal Code § 16.02(b), *et seq*. Plaintiffs also assert common law claims for intrusion upon seclusion (Count IV), breach of implied contract (Count V) and breach of contract (Count VI).

Plaintiffs' Complaint should be dismissed in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Initially, and critically, Plaintiffs do not have Article III standing to bring this suit in federal court. They fail to allege any concrete harm or threat of harm constituting an injury in fact—because they cannot. In place of alleging a real, non-abstract injury,

Plaintiffs vaguely allege the interception of their information by Meta. *See, e.g.*, Compl. at ¶ 3.[1] Without accompanying harm, Plaintiffs do not have standing. Plaintiffs also fail to meet the standing requirements of causation and redressability.

Additionally, although Plaintiffs seek relief for alleged disclosure of their PHI, they fail to actually allege that PHI was involved. The categories of information they claim constitute PHI categorically are not. In the event this Court determines PHI is at issue, Plaintiffs' state law claims must be dismissed on the basis of HIPAA preemption. HIPAA preempts state laws that are less stringent than HIPAA's requirements and provides the comprehensive regulatory framework under which Plaintiffs must make a claim.

Furthermore, Plaintiff Sharma and Plaintiff Dean's claims for violations of the wiretapping statutes and intrusion upon seclusion are barred by the statute of limitations. With respect to all of the Plaintiffs, their allegations do not meet even the most liberal pleading standard under Rule 12(b)(6) and they fail to state a claim for any of their six counts. For all these reasons, the Complaint should be dismissed with prejudice.

## II. RULE 12(b)(1) MOTION TO DISMISS

### A. Legal Standard for Article III Standing.

Article III of the U.S. Constitution limits the federal courts' jurisdiction to "cases" and "controversies." U.S. CONST. ART. III, § 2. "Standing is an essential and unchanging part of the

---

[1] Plaintiffs' attempt to manufacture claims based on the Website's use of Meta Pixel is disingenuous at best given that this exact same tracking technology is used on their counsel's website. *See* zlk.com ("We use cookies to ensure that we give you the best experience on our website."). The Court can take judicial notice of this content from Plaintiffs' website. *See* Fed. R. Evid. 201(b); *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 491 n.12 (5th Cir. 2013) (district court was entitled to take judicial notice of posts appearing on website); *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 901 n.7 (N.D. Tex. 2020) (taking judicial notice of information posted on the defendant's website).

case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "A case is properly dismissed for lack of subject matter jurisdiction when [a federal] court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted). The party invoking federal jurisdiction bears the burden of demonstrating standing. *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021). To carry that burden, a plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation," including at the pleading stage. *Lujan*, 504 U.S. at 561.

The Supreme Court has held that the "irreducible constitutional minimum" to establish Article III standing consists of three elements. *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560-61). First, the plaintiff must have suffered an "injury in fact" which is both: (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical." *Id*. Second, a plaintiff must establish a causal connection between the injury and the defendant's acts. *Id*. Third, the injury must be likely to be redressed by a favorable decision. *Id*. Failure to meet any one of these three standing criteria requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Id*.

**B. Plaintiffs Lack Standing, Requiring the Complaint to be Dismissed in its Entirety.**

Plaintiffs do not attempt to allege actual harm or an imminent risk of actual harm sufficient to give rise to an injury in fact—because they cannot. Even if they had alleged an injury in fact, any such harm is not alleged to be causally connected to Defendant's conduct. No hypothetical harm experienced by Plaintiffs could possibly be redressed by a favorable decision here. As such, Plaintiffs fail to carry their burden to demonstrate each of the three elements of Article III standing. Each failure independently justifies dismissal under Rule 12(b)(1).

**1. Plaintiffs Fail to Plead An Injury In Fact.**

Although all three elements are required, a plaintiff's failure to meet the injury in fact element is often determinative of standing. *Bradix v. Advance Stores Co.*, No. 16-4902, 2016 U.S. Dist. LEXIS 87368, at *7-8 (E.D. La. July 5, 2016). The concreteness aspect of injury in fact means that the injury "must actually exist." *Spokeo*, 578 U.S. at 338 (internal citations and quotation marks omitted). In other words, it must be "real, and not abstract." *Id.* (internal citations and quotation marks omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1).

Importantly for the purposes of this case, this means that Plaintiffs cannot satisfy Article III by alleging a bare statutory violation that does not result in harm. *Id.* at 341. The fact that a legal standard may have been violated says nothing about whether any harm has been suffered, let alone whether the harm is "concrete" and "particularized." *Id*. at 334.

Moreover, because an injury in fact cannot be conjectural or hypothetical, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm at least unless the exposure to the risk of future harm itself causes a separate concrete harm." *TransUnion*, 141 S.Ct. at 2210-11. The *TransUnion* Court noted that certain members of the proposed class did not have standing because the risk of harm they alleged "never materialized." *Id.* at 2198-99. The plaintiffs in *TransUnion*, like the Plaintiffs here, did not show that putative "class members were independently harmed by their exposure to the risk itself." *Id.* Simply put, the Supreme Court has made clear that a plaintiff must allege either: (1) actual harm, or (2) a sufficient risk of actual harm that *materializes*, in order to satisfy the injury in fact requirement. In the present matter, neither *actual harm, or sufficient risk of harm* has been shown. As such this case must be dismissed.

Plaintiffs allege that they typed queries into the Website Search Bar for products or to schedule doctor appointments[2] (Compl. at ¶¶ 27, 59, 195), but fail to claim attendant harm as a result of Meta's alleged interception of this information. Plaintiffs do not allege, for example, that they suffered identity theft, fraud, or monetary loss due to interception of communications they made with Defendant's Website – harms that some courts have found sufficient to establish injury in fact. Instead, Plaintiffs summarily and abstractly claim that "Plaintiffs and the Nationwide Class have been damaged due to the unauthorized interception, disclosure, and use of their confidential communications . . ." Compl. at ¶ 211. These conclusory allegations are simply not enough to demonstrate that Plaintiffs experienced an actual injury. *See Valenzuela v. Keurig Green Mountain, Inc.,* No. 3:22-cv-09042-JSC, 2023 U.S. Dist. LEXIS 182222, at *1-2 (N.D. Cal. Oct. 10, 2023) (dismissing claim under the California Invasion of Privacy Act due to plaintiff's failure to plead that her interaction with a website's chatbot led to a concrete injury sufficient for Article III Standing; a mere "technical" or "bare procedural violation" is inadequate).

Similarly, Plaintiffs do not allege that Meta's interception of communications could potentially result in future harm. Even assuming Plaintiffs had pleaded a risk of future harm, the Supreme Court has consistently emphasized that a risk of harm must be "certainly impending," and cannot depend on "a highly attenuated chain of possibilities." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147-48 (2013). Plaintiffs make clear that Meta's intent for intercepting any communication was for marketing purposes. Compl. at ¶ 79. It is difficult to conceive any scenario

[2] Plaintiffs' allegations that they used the Search Bar to schedule doctor appointments are demonstrably false as the search function is for products only. Since this fact is readily determinable from visiting the Website, this Court can take judicial notice of it. *See* Fed. R. Evid. 201(b); *Trout Point Lodge*, 729 F.3d at 491 n.12; *Reed*, 436 F. Supp. 3d at 901 n.7.

in which Plaintiffs could experience a certainly impending concrete harm, and any attempt to read an allegation of future harm into the Complaint would be nothing more than speculation.

**2. Plaintiffs Fail to Plead a Causal Connection Between any Alleged Injury and Defendant's Conduct.**

It is apparent from the Complaint that the vast majority of Plaintiffs' allegations are directed toward the conduct of Meta and its Pixel technology. Plaintiffs allege that *Meta* intercepted communications, that *Meta* tracked user queries via the Website's Search Bar, and that *Meta* collected their information. *See, e.g.*, Compl., ¶¶ 70-73. Even assuming there were some potential harm to Plaintiffs that could hypothetically materialize, they have not met their burden in pleading that such injury was caused by Defendant. *See Lujan*, 504 U.S. at 560 ("[T]here must be a causal connection between the injury and the conduct complained of," that is, "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'") (internal citations omitted).

**3. Plaintiffs Fail to Plead Facts Demonstrating that Any Injury Could be Redressed.**

Plaintiffs seek monetary damages and injunctive relief from Defendant for the actions of Meta. But Plaintiffs fail to allege how any injury caused by Meta could possibly be redressed by a decision against Defendant. In fact, as set forth above, Plaintiffs do not plead an injury in fact *at all*. So there is nothing to redress. This is precisely why "the injury-in-fact element is often determinative" of Article III standing. *Bradix*, 2016 U.S. Dist. LEXIS, at *7-8. Without an injury in fact, there can be no redress.

**4. Plaintiffs Lack Standing to Seek Injunctive Relief Because Plaintiffs Fail to Plead a Likelihood of Substantial and Immediate Irreparable Injury.**

To have standing for injunctive relief, in addition to meeting the regular requirements of Article III, Plaintiffs must also "demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Funeral Consumer Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d

330, 342 (5th Cir. 2012). This threat must be both "substantial and immediate." *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (internal quotation omitted). A conjectural or hypothetical threat of future injury is not enough. *See Whitmore v. Arkansas*, 110 S. Ct. 1717, 1723 (1990). A reasonable showing of a "sufficient likelihood" that the plaintiff will again be injured is necessary. *Lyons*, 461 U.S. at 111.

In order, then, for Plaintiffs to have standing warranting injunctive relief, Plaintiffs are required to allege not only that Defendant's actions caused them a concrete injury in fact (which they do not), but also that there is a "sufficient likelihood" that they would be injured again by Defendant's conduct. Plaintiffs do not allege continuing harms to them arising from Meta's Pixel technology. Nor do Plaintiffs allege their continued use of Defendant's Website. No ongoing conduct is pled and any threat of injury is hypothetical and conjectural at best. Consequently, Plaintiffs fail to make a "credible assertion" that conduct creating a legally cognizable injury is likely to happen in the future to them. *See Lyons*, 461 U.S. at 105–06. Plaintiffs therefore cannot establish Article III standing to seek injunctive relief.

## III. <u>RULE 12(B)(6) MOTION TO DISMISS</u>

Plaintiffs plead the following six causes of action: Count I, violation of the Federal Wiretap Act; Count II, violation of WESCA; Count III, violation of the Texas Wiretap Act; Count IV, intrusion upon seclusion; Count V, breach of implied contract; and Count VI, breach of contract. Each cause of action fails on its face.

### A. Legal Standard for Dismissal Under Rule 12(b)(6).

Rule 12(b)(6) authorizes dismissal if the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must allege sufficient facts to "raise a right to relief above the speculative level."

*Great Am. Assur. Co. v. Wills*, Civil Action No. SA-10-CV-353-XR, 2012 U.S. Dist. LEXIS 206287, at *1 (W.D. Tex. July 24, 2021) (*quoting Twombly*, 550 U.S. at 555). Rule 8(a) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief' . . . but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (*quoting Twombly*, 550 U.S. at 555). Conclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as factual allegations will not suffice to prevent granting a motion to dismiss. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). When plaintiffs "have not nudged their claims across the line from conceivable to plausible their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

**B. Plaintiffs' Allegations do not Demonstrate Any Disclosure of PHI.**

As an initial matter, each of Plaintiffs' six counts rest on the allegation that Plaintiffs' "PHI" was intercepted by Meta. *See, e.g.*, Compl., ¶¶ 6, 23, 193, 217, 225, 230, 240, 249. Plaintiffs' allegations of disclosure of PHI are inconsistent and vague, and a close reading of the Complaint demonstrates that no PHI was intercepted or disclosed. As Plaintiffs recognize, PHI includes *individually identifiable health information*, where that information identifies the individual or there is a reasonable basis to believe the information can be used to identify the individual, and reveals the (1) *past, present, or future physical or mental health or condition of an individual*; (2) the provision of health care to an individual; or (3) the past, present, or future payment for the provision of health care to an individual. 45 CFR § 160.103 (emphasis added). None of the information allegedly intercepted by Meta fits the foregoing definition. Even assuming that PHI was allegedly disclosed, Plaintiffs' state law claims must be dismissed on the basis of HIPAA preemption.

With respect to the named Plaintiffs, the Complaint alleges that "search[es] for products and information," attempts to schedule appointments, and queries for "prescription products" on

Defendant's public-facing unauthenticated Website constitutes PHI. *See, e.g.*, Compl. ¶¶ 24-27. Although the Complaint also vaguely refers to searches about "health articles" or information "related to health conditions," it does not allege that any of the named Plaintiffs actually searched for information regarding health conditions or input information relating to *their specific* health conditions. *Id*. at ¶ 4. The Complaint does not allege that any appointment details, specific prescription information, or individually identifiable information relating to the past, present, or future physical or mental health condition of *Plaintiffs* was potentially disclosed. Plaintiffs vaguely contend that they searched for "prescription products" and do not provide further elaboration as to what type of "prescription products" could be searched via the Website's Search Bar or that prescription products could be searched at all. Compl. ¶¶ 24-27.

To argue that this information constitutes PHI, Plaintiffs cite to guidance issued by the HHS Office for Civil Rights (HHS) on December 1, 2022. However, on March 18, 2024, HHS updated this guidance[3] to increase clarity for HIPAA regulated entities and the public. In that updated guidance, HHS provides:

> Some regulated entities may be disclosing a variety of information to tracking technology vendors through tracking technologies placed on the regulated entity's website . . . such as information that the individual types or selects when they use regulated entities' websites . . . The information disclosed might include an individual's medical record number, home or email address, or dates of appointments, as well as an individual's IP address or geographic location, device IDs, or any unique identifying code. In some cases, the information disclosed may meet the definition of individually identifiable health information (IIHI), which is a necessary pre-condition for information to meet the definition of PHI when it is transmitted or maintained by a regulated entity.

[3] *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES (March, 18, 2024), *available at* https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited April 22, 2024).

* * *

> But the mere fact that an online tracking technology connects the IP address of a user's device (or other identifying information) with a visit to a webpage addressing specific health conditions or listing health care providers is not a sufficient combination of information to constitute IIHI if the visit to the webpage is not related to an individual's past present or future health, health care, or payment for health care.

As it relates to unauthenticated webpages, like Defendant's, HHS provides that:

> Visits to unauthenticated webpages do not result in a disclosure of PHI to tracking technology vendor if the online tracking technologies on the webpages do not have access to information that relates to any individual's past, present, or future health, health care, or payment for health care. . . This is true even if there is a reasonable basis to believe that the information can be used to identify the user who visited the webpage, because the online tracking technologies in this example did not have access to information about an individual's past, present, or future health, health care, or payment for health care.

Plaintiffs have not pleaded that Meta had access to information relating to their past, present or future health, health care, or payment for health care as a result of their interactions with the Website. The Complaint only alleges that Meta intercepted communications relating to Plaintiffs' attempts to schedule appointments (without disclosure of health information), and searches for products and articles with no indication that those searches involved conditions of Plaintiffs. *See, e.g.*, Compl. ¶¶ 24-27.

Even if Plaintiffs had adequately pleaded that the information potentially intercepted by Meta was covered by HHS' outdated 2022 guidance, that guidance does not have the force of law. *See, e.g., Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 U.S. Dist. LEXIS 126777, at *9 (N.D. Ill. July 24, 2023) (holding that HHS' 2022 guidance is not entitled to deference under *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837 (1984)). Because the alleged information is not PHI under HIPAA, and each and every one of Plaintiffs' claims rest on the alleged disclosure of PHI, the Complaint fails in its entirety.

**C. Alternatively, if the Information is PHI, Plaintiffs' State Law Claims are Preempted.**

Assuming *arguendo* that HIPAA applies, it preempts Plaintiffs' state law claims because they are contrary to HIPAA's requirements for the safeguarding of PHI. 45 C.F.R. § 160.203. HIPAA preempts state law unless the state law is "more stringent" than HIPAA's requirements. *Id.; see also* 42 U.S.C. § 1320d-7; 67 Fed. Reg. 53182, 53212 (Aug. 14, 2002). In this context, "more stringent" means "with respect to a use or disclosure, the law prohibits or restricts a use or disclosure in circumstances under which such use or disclosure otherwise would be permitted." 45 C.F.R. § 160.202. Plaintiffs cannot make an end-run around HIPAA, which does not allow for a private right of action, by pursuing these state law claims. As such, their alleged PHI violations claims must be dismissed.

Plaintiffs' claims for violations of WESCA and the Texas Wiretap Act, as well as intrusion upon seclusion, breach of implied contract and breach of contract, purportedly arise out of Defendant's failure to safeguard their PHI. *See generally*, Compl. However, HIPAA provides a specific and comprehensive regulatory framework for safeguarding PHI. Among HIPAA's purposes were to establish national privacy standards and fair information practices regarding individually identifiable health information. *Brende v. Hara*, 153 P.3d 1109, 1114 (Haw. 2007); *see also Wade v. Vabnick-Wener*, 922 F. Supp. 2d 679, 687 (W.D. Tenn. 2010) ("HIPAA embodies Congress' recognition of 'the importance of protecting the privacy of health information in the midst of the rapid evolution of health information systems.'") (quoting *South Carolina Medical Ass'n v. Thompson*, 327 F.3d 346, 348 (4th Cir. 2003)).

Plaintiffs' state law claims are all less stringent than HIPAA. Indeed, none of these claims provide any framework for the safeguarding of PHI. HIPAA generally requires an individual's written authorization before a use or disclosure of his or her PHI can be made for marketing. 45 C.F.R. §§ 164.501, 164.508(a)(3). There are several requirements for a valid HIPAA

authorization, one of which is that the authorization must contain the signature of the individual. 45 C.F.R. §§ 164.508(b), 164.508 (c)(1)(vi).

This is more stringent than the related consent requirements under Plaintiffs' state claims: (1) As explained *supra* in Section III(F), the Texas Wiretap Act is a one-party consent statute, meaning that the individual's consent (or knowledge) is not needed to legitimize the interception. Tex. Penal Code § 16.02(4)(A); (2) Subject to exceptions, WESCA requires prior consent of all parties to the communication but has no requirement that this consent be written or include the signatures of the parties. 18 Pa. Cons. Stat. Ann. § 5704; (3) Under applicable state law (see *supra* Sections III(G) and (H)), intrusion upon seclusion does not require written authorization prior to data collection nor does Plaintiffs' breach of contract claims require a standard more stringent than under 45 C.F.R. 164.508 (c)(1)(vi) to form a contract.

To the extent Plaintiffs may be entitled to any relief regarding their PHI, they must seek it from HHS pursuant to 42 U.S.C. §§ 1320d-5, d-6. It is indisputable that no private right of action exists for Plaintiffs to assert a claim under HIPAA. *See Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006) ("HIPAA . . . do[es] not provide for a private right of action, as HIPAA by its terms limits enforcement of its provisions to the Secretary of the U.S. Department of Human Services."); 42 U.S.C. §§ 1320d-5, d-6; 65 Fed. Reg. 82462, 82601 (Dec. 28, 2000); *Walters v. Blue Cross & Blue Shield of Tex., Inc.*, No. 3:21-CV-981-L, 2022 U.S. Dist. LEXIS 55061, at *14 (N.D. Tex. 2022) (declining to allow purported HIPAA violations to form the basis of negligence *per se* claims because HIPAA does not contain a private right of action, and to hold otherwise would run afoul of legislative intent).

### D. Plaintiff Dean's Wiretapping and Intrusion Upon Seclusion Claims are Barred by the Statute of Limitations.

Plaintiff Dean alleges that he "visited Defendant's Website at various times, including in July 2020 to book a doctor's appointment." Compl. at ¶ 27. However, he does not allege that he visited the Website on any more recent date. Since the Complaint was not filed until February 23, 2024, Dean's claims under the Federal Wiretap Act, WESCA, Texas Wiretap Act, and for intrusion upon seclusion are barred by their two-year statute of limitations. *See* Federal Wiretap Act, 18 U.S.C.S. § 2520(e) ("A civil action . . . may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation."); WESCA, 18 Pa. Cons. Stat. Ann. § 5747(e) ("A civil action . . . may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation."); Texas Wiretap Act and intrusion upon seclusion, Tex. Civ. Prac. & Rem. Code § 16.003 ("[A] person must bring suit . . . not later than two years after the day the cause of action accrues.").

Plaintiffs seek to avoid this outcome by claiming that they "could not with due diligence have discovered the full scope of Visionworks' conduct because the incorporation of the Tracking Entity's tracking tools is highly technical and there were no disclosures or other indication that would inform a reasonable consumer that Visionworks was disclosing and allowing the interception of such information to these third parties." Compl. ¶ 166. However, in the Fifth Circuit, the statute of limitations is tolled only if the defendant has engaged in "affirmative acts" of concealment. *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1528-29 (5th Cir. 1988).

As Plaintiffs admit, Meta Pixel could have been found; they claim that they were unable to discover the tracking tool earlier because it is "highly technical." Compl. ¶ 166. Just because something is described as "highly technical" does not mean it cannot be found. Nor does it mean

that Defendant was affirmatively concealing it. Accordingly, Plaintiffs' tolling allegations are insufficient to overcome the statute of limitations and these claims should be dismissed.

**E. Plaintiff Sharma May be Barred By the Statute of Limitations.**

Next, Plaintiff Sharma vaguely alleges that he "visited Defendant's Website, including in early 2022 to book a doctor appointment." Compl. ¶ 24. Given the Complaint filing date of February 23, 2024, Sharma's wiretapping and intrusion upon seclusion claims may be barred by the applicable two-year statutes of limitations. Sharma's effort to artfully plead around the statute of limitations by referring to "early 2022" rather than an actual date should be rejected. Neither the Court nor the Defendant should have to guess when the alleged violations occurred. Sharma's lack of specificity is simply not sufficient to state a claim. *See Owens v. Trans Union, LLC*, Civil Action No. 4:20-cv-665-SDJ-KPJ, 2022 U.S. Dist. LEXIS 229123, at *32-33 (E.D. Tex. Sep. 9, 2022) (dismissing plaintiff's TCPA complaint with prejudice due to lack of specificity, including failure to allege actual dates and the number of calls received).

**F. Plaintiffs Fail to State a Claim Under the Federal Wiretap Act (Count I) and the Texas Wiretap Act (Count III).**

Count I, for violation of the Federal Wiretap Act, and Count III, for violation of the Texas Wiretap Act both fail as a matter of law for the same reason: the party exception. To state a claim under the Federal Wiretap Act, Plaintiffs must allege that Defendant: (1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015); *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003). "Intercept" is defined in the Federal Wiretap Act as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "[T]he

federal wiretap statute is substantively the same as the Texas statute . . . ." *Castillo v. State*, 810 S.W.2d 180, 183 (Tex. Crim. App. 1990).

The Federal Wiretap Act and the Texas Wiretap Act are one-party consent statutes, meaning a party cannot be liable for a violation when it "is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). Because Defendant was a party to the alleged communications, it cannot be liable under either statute. *See Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 C 5891, 2023 U.S. Dist. LEXIS 200619, at *4 (N.D. Ill. Nov. 8, 2023) ("[S]ince [defendant] is a necessary party to any communication from a patient concerning the provision of healthcare, it cannot be liable for the receipt of the communication.").

Defendant, through its Website, was the intended recipient of Plaintiffs' communications and cannot, therefore, "intercept" anything. *See B.K. v. Eisenhower Med. Ctr.*, No. EDCV 23-2092 JGB, 2024 U.S. Dist. LEXIS 35721, at *13 (C.D. Cal. Feb. 29, 2024) *rev'd solely with respect to plaintiff's ability to re-file claims*, 2024 U.S. Dist. LEXIS 67497, at *11 (C.D. Cal. 2024) (holding that "[b]ecause Defendant was the party that was meant to, and did, receive Plaintiffs' communications on the Website, under the party exception, 'any alleged interception of the communications is not actionable.'") (citing *Pena v. Gamestop, Inc.*, 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023)).

Plaintiffs attempt to overcome this deficiency by alleging, without any attendant facts, that Meta intercepted Plaintiffs' communications for the purpose of committing a tortious or criminal act—an exemption to the party exception. *See* Compl., ¶¶ 37, 202. This is a threadbare legal conclusion that does not prevent a motion to dismiss. *Fernandez-Montes*, 987 F.2d at 284.

Regardless, this exception does not apply to the alleged interception itself. "[A] plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (emphasis in original). In *B.K. v. Eisenhower Medical Center*, the court dismissed a plaintiff's Federal Wiretap Act claim premised on near identical circumstances: the defendant's purported unauthorized disclosure of website visitors and users' PII and PHI to Meta via the Meta Pixel. The court found it fatal that the plaintiff "[did] not allege that this purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable." *B.K.*, LEXIS 35721, at *14 (C.D. Cal. 2024), *rev'd solely in respect to plaintiff's ability to re-file claims,* 2024 U.S. Dist. LEXIS 67497, at *11 (C.D. Cal. 2024) (giving plaintiff an opportunity to cure their Federal Wiretap Act pleading, but still referring to plaintiff's original claim as "poorly plead."); *see also Kurowski*, 2023 U.S. Dist. LEXIS 126777, at *11-12 ("[I]t is well established that [the crime-tort exception] only applied where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself.").

Furthermore, this allegation is belied by Plaintiffs' own pleading, which specifically claims that the purpose of Meta Pixel is advertising and marketing. *See* Compl., ¶¶ 76-81. Counts I and III fail as a matter of law and Plaintiffs cannot fix these deficiencies with an amendment. As such, Count I and Count III should be dismissed with prejudice.

### G. Plaintiffs Fail to State a Claim for Violation of Pennsylvania's WESCA (Count II) and Intrusion Upon Seclusion (Count IV).

The Complaint similarly fails to state a claim for a violation of WESCA, which requires Plaintiffs to show (1) their engagement in a communication; (2) their possession of an expectation that the communication would not be intercepted; (3) that the expectation was justifiable under the

circumstances; and (4) that defendant attempted to, or successfully intercepted the communication, or encouraged another to do so. *Agnew v. Dupler*, 553 Pa. 33, 38 (Pa. 1998).

Here, Plaintiffs cannot allege the possession of any justifiable expectation that their communications would not be intercepted. There is no reasonable expectation of privacy to information voluntarily submitted on a public-facing, unauthenticated Website. As set forth above, Plaintiffs fail to plead that any PHI was involved (let alone intercepted), instead opting to include vague allegations of Meta's interception of appointment scheduling attempts and queries for products. Absent the inclusion of PHI, the Complaint cannot articulate how Plaintiffs could have any expectation of privacy to these communications.

Pennsylvania case law interpreting state law claims for privacy violations is instructive here. Pennsylvania courts have consistently held that the tort of intrusion upon seclusion is not implicated where a defendant legitimately obtains information from a plaintiff. *See Burger v. Blair Med. Assocs.*, 600 Pa. 194, 200 (2009) (holding that "'intrusion upon seclusion' is not implicated where, as here, the defendant had legitimately obtained the information.") (citations omitted). Such a state law interpretation should apply here as well. Any information obtained via the Website was voluntarily supplied by Plaintiffs and there can be no expectation to privacy thereto.

Plaintiffs' intrusion upon seclusion claim fails for similar reasons as the WESCA claim. To state a claim for intrusion upon seclusion, Plaintiffs must plead: (1) an intentional intrusion, physical or otherwise, upon another's solitude, seclusion, or private affairs or concerns; (2) that the intrusion would be highly offensive to a reasonable person; and (3) that the claimant suffered an injury as a result of the intrusion. *Robinson v. Brannon*, 313 S.W.3d 860, 867 (Tex. App.—Houston [14th Dist.] 2010) (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)). The tort typically involves either physical invasion of a person's property, eavesdropping on a private

conversation, or spying. *See GTE Mobilnet of S. Tex. Ltd. v. Pascouet*, 61 S.W.3d 599, 618 (Tex. App.—Houston [14th Dist.] 2001). To be actionable, the intrusion must be highly offensive, meaning that it must be unreasonable, unjustified, or unwarranted. *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 816 (S.D. Tex. 2014).

Again, there is no intrusion here at all: Plaintiffs voluntarily input information into the Website's Search Bar. Count IV falls on that basis alone. Additionally, as set forth above, Plaintiffs fail to plead that any PHI was intercepted by Meta. As such, there is no indication of an intrusion into "private facts." Moreover, the Complaint fails to allege any facts supporting how the interception of information relating to general appointment or product search information would be "highly offensive" to a reasonable person. Plaintiffs summarily claim that the alleged is "highly offensive behavior" with no support. Compl. ¶¶ 231-232.

In *B.K. v. Eisenhower Med. Ctr.*, the court dismissed substantially similar privacy claims because the plaintiffs failed to sufficiently plead the disclosure of medical information, instead pleading only that they used the defendant's Website for "routine medical searches and inquiries." *B.K.*, 2024 U.S. Dist. LEXIS at *18. As a result, the court found held that the plaintiffs' claims "do not rise to the level of an 'egregious breach of the social norms' that is 'highly offensive.'" *Id.* (citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 , 1025 (N.D. Cal. 2012)). The same is true here for Plaintiffs' arguments. Plaintiffs used the Website for routine searches and inquiries, and there was no "highly offensive" intrusion.

Finally, and as discussed in further detail above, Plaintiffs fail to plead any injury, which is a required element to state a claim for intrusion upon seclusion. *Valenzuela*, 853 S.W.2d at 513 (Tex. 1993). Counts II and IV should thus be dismissed with prejudice.

**H. Plaintiffs' Contract Claims are Deficient (Counts V and VI).**

The elements of a contract, express or implied, are identical. *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App.—Houston [1st Dist.] 2009). These elements are an offer, an acceptance, a meeting of the minds, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutually binding. *Id*. Plaintiffs allege that "[w]hen Plaintiffs and [the putative class] provided their PHI to Visionworks, they entered into an implied contract pursuant to which Visionworks agreed to safeguard and not disclose their PHI without consent." Compl., ¶ 237. This is the sum total of Plaintiffs' allegations attempting to establish an implied contract. There are no supporting factual allegations to support any purported implied contract other than this single conclusory statement. This is simply not enough to state a claim.

With respect to Count VI alleging breach of an express contract, Plaintiffs must allege: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Smith Int'l, Inc. v. Egle Grp.*, LLC, 490 F.3d 380, 387 (5th Cir. 2007). Plaintiffs fail to allege any of the foregoing elements. Most importantly, the "contract" Plaintiffs claim was breached here is the Website's Terms of Use. But the Complaint fails to identify any section or any specific term that was allegedly violated. In fact, the Complaint specifically states that the "Terms of Use" are quiet as to the handling of protected health information . . ." Compl., ¶ 147. According to Plaintiffs' own allegations, then, there is no section of the Terms of Use that applies to Plaintiffs' claims. Of course, Defendant cannot breach a contractual term that does not exist.

Because Plaintiffs cannot plead the existence of an implied contract and cannot identify any provision of the Terms of Use that was allegedly breached, Counts V and VI should be dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, this Court should dismiss Plaintiffs' Class Action Complaint in its entirety, with prejudice. A proposed order is attached hereto as **Exhibit 1**.

Dated: May 29, 2024

Respectfully submitted,

VISIONWORKS OF AMERICA, INC.

By: s/*J. Daniel Harkins*______
One of Its Attorneys

DYKEMA GOSSETT PLLC
J. Daniel Harkins
*dharkins@dykema.com*
112 Pecan St., Ste. 1800
San Antonio, TX 78205
Tel: (210) 554-5500
Fax: (866) 219-7593

Cinthia Granados Motley (*pro hac vice*)
*cmotley@dykema.com*
10 S. Wacker Dr., Ste. 2300
Chicago, IL 60606
Tel.: (312) 876-1700
Fax: (312) 876-1155

706170.001154 4861-2693-8051.1