**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SAURAV SHARMA, DIANE YOUNG, JAIME STIEVE, and GEORGE DEAN, On Behalf of Themselves and All Others Similarly Situated, | § | |
| | § | CASE NO. 5:24-cv-00206-FB |
| Plaintiffs, | § | |
| v. | § | |
| VISIONWORKS OF AMERICA, INC., | § | |
| Defendant. | § | |

**DEFENDANT VISIONWORKS OF AMERICA, INC.'S**
**OPPOSED MOTION TO COMPEL MEDIATION AND ARBITRATION**

Defendant, Visionworks of America, Inc. ("**Defendant**"), hereby respectfully submits this Motion to Compel Mediation and Arbitration (the "**Motion**"), in conjunction with its Declaration of Todd Jones (attached hereto as **Exhibit A**) in support of the Motion, and in support thereof states as follows:

## I. INTRODUCTION

Defendant files this Motion requesting the Court to enter an order dismissing these proceedings and compelling Plaintiffs Saurav Sharma, Diane Young, Jaime Stieve, and George Dean (collectively, "**Plaintiffs**") to abide by their agreement to submit all disputes relating to the Visionworks.com website (the "**Website**") to mediation as well as to compel arbitration for certain absent putative class members. The valid and enforceable agreements to which all the Plaintiffs and absent putative class members assented when they accessed and received the benefit of the Website contain a binding mediation clause requiring the parties to observe a specific process for resolving disputes prior to the filing of suit. That condition was not satisfied prior to the filing of this litigation.

Further, beginning on February 22, 2024, all absent putative class members who engaged with the Website have assented to mandatory arbitration as well as to a waiver of class actions and class arbitrations. Accordingly, Defendant moves the Court to (i) enforce its contractual agreement with Plaintiffs and dismiss this suit so that the parties may first mediate this matter and (ii) strike from this case the purported claims on behalf of absent putative class members who engaged with the Website on or after February 22, 2024.

Defendant has filed this Motion in conjunction with a Motion to Dismiss pursuant to Fed. Rule. Civ. Pro. 12(b)(1) and (6). Defendant respectfully requests that this Court first consider this Motion with regards to Plaintiffs' claims and grant the requested relief. However, to the extent the Court declines to grant the requested relief for any of Plaintiffs' claims under this Motion, Defendant respectfully requests that this Court consider Defendant's Rule 12(b)(1) and (6) Motion to Dismiss for such remaining claims.

## II. FACTUAL BACKGROUND

Plaintiffs filed a six-count putative Class Action Complaint (the "**Complaint**" or "**Compl.**") against Defendant seeking injunctive relief and damages for the alleged interception, collection and disclosure of their web browsing information. The crux of the Complaint alleges that Meta (also known as Facebook) intercepted Plaintiffs' communications through the Website by way of its Pixel technology without Plaintiffs' consent. Since 2018, all Website visitors have assented to: (1) one of three versions of the Website's terms of use and (2) one of two versions of a privacy policy:

| Document | Effective Term | Summary of Relevant Provisions | Exhibit[1] |
|---|---|---|---|
| Visionworks.com Terms of Use (“**Jan. 2018 Terms**”) | January 1, 2018 to February 21, 2024 | Expressly incorporates by reference mandatory mediation provisions from the Jan. 2018 Privacy Policy and the Mar. 2022 Privacy Policy. | 1 |
| Visionworks.com Terms of Use (“**Feb. 2024 Terms**”) | February 22, 2024 to March 7, 2024 | Mandatory arbitration and class action waiver. Expressly incorporates by reference mandatory mediation provision from the Mar. 2022 Privacy Policy. | 2 |
| Visionworks.com Terms of Use (“**Mar. 2024 Terms**”) | March 8, 2024 to Present | Mandatory mediation, arbitration and class action waiver. Expressly incorporates by reference mandatory mediation provision from the Mar. 2022 Privacy Policy. | 3 |
| The Jan. 2018 Terms, Feb. 2024 Terms and Mar. 2024 Terms are collectively referred to as the “**Website Terms**.” | | | |
| | | | |
| Visionworks.com Privacy Policy (“**Jan. 2018 Privacy Policy**”) | January 1, 2018 to March 29, 2022 | Mandatory mediation | 4 |
| Visionworks.com Privacy Policy (“**Mar. 2022 Privacy Policy**”) | March 30, 2022 to Present | Mandatory mediation | 5 |
| The Jan. 2018 Privacy Policy and Mar. 2022 Privacy Policy are collectively referred to as the “**Website Privacy Policies**.” | | | |

Per the Complaint, Plaintiffs engaged with the Website at the following points in time:

- Plaintiff Sharma: “early 2022.” (Cmplt. ¶ 24).
- Plaintiff Young: “late 2022.” (Cmplt. ¶ 25).
- Plaintiff Stieve: “various times”, “early 2022” and “early 2023.” (Cmplt. ¶ 26).
- Plaintiff Dean: “various times” and “July 2020.” (Cmplt. ¶ 27).[2]

[1] The live version of the Jan. 2018 Privacy Policy has been sourced from the internet archive “Wayback Machine.” Federal courts have taken judicial notice of the archived webpages using Wayback Machine “as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.” *See UL LLC v. Space Chariot, Inc.*, 250 F. Supp. 3d 596, 604 n.2 (C.D. Cal. 2017) (listing cases). The Court can take judicial notice of this content from websites. *See* Fed. R. Evid. 201(b); *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 491 n.12 (5th Cir. 2013) (observing that a district court is entitled to take judicial notice of posts appearing on website); *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 901 n.7 (N.D. Tex. 2020) (taking judicial notice of information posted on the defendant’s website).

[2] Plaintiffs have not plead with sufficient specificity to allow Defendant or the Court to ascertain what Website Terms and Privacy Policies may have been in place for Plaintiffs Stieve and Dean during their engagement with the Website at “various times.”

Based upon the Complaint, all named Plaintiffs engaged with the Website under the Jan. 2018 Terms and the Jan. 2018 Privacy Policy, except for Plaintiff Stieve, who also engaged with the Website under the Mar. 2022 Privacy Policy. Absent putative class members may have engaged with the Website under any of the Website Terms or Website Privacy Policies.[3]

All three versions of the Website Terms expressly incorporate the Website Privacy Policies by reference:

**Jan. 2018 Terms, Section 21:**

> Any data that you provide to Visionworks using this Site is subject to the Privacy Policy that is posted on the Site and in effect at the time such data is provided. Visionworks may update its Privacy Policy from time to time, so you should be sure to review the Privacy Policy posted on the Site prior to providing any information to Visionworks using the Site. **This Agreement and Visionworks' Privacy Policy (which is incorporated herein by reference) constitute the entire Agreement** and supersede any other agreements or understandings (oral or written) between you and Visionworks with respect to their subject matters.

(Ex. 1, Jan. 2018 Terms, § 21) (emphasis added).

**Feb. 2024 Terms, Section 20:**

> When you access or use the Sites Sites [sic] Visionworks may obtain information from or about you. Any information we obtain about you will be used in accordance with our Privacy Policy, incorporated herein by reference, posted on the Sites. Visionworks may update its Privacy Policy from time to time, so you should be sure to review the Privacy Policy posted on the Sites prior to using the Sites. By accessing or using the Sites, you acknowledge, agree and consent to the information collection and use practices described in the Privacy Policy. **This Agreement and Visionworks' Privacy Policy constitute the entire Agreement** and supersede any other agreements or understandings (oral or written) between you and Visionworks with respect to their subject matters.

(Ex. 2, Feb. 2024 Terms, § 20) (emphasis added).

**Mar. 2024 Terms, Section 19:**

---

[3] Defendant reserves the right to assert mandatory mediation, arbitration and class action/class arbitration waiver against absent putative class members who engaged with the Website prior to January 1, 2018.

> When you access or use the Sites, Visionworks may obtain information from or about you. Any information we obtain about you will be used in accordance with our Privacy Policy posted on the Sites and also accessible here https://www.visionworks.com/privacy-policy. Visionworks may update its Privacy Policy from time to time, so you should be sure to review the Privacy Policy posted on the Sites prior to using the Sites. By accessing or using the Sites, you acknowledge, agree and consent to the information collection and use practices described in the Privacy Policy. **This Agreement and Visionworks' Privacy Policy constitute the entire Agreement** and supersede any other agreements or understandings (oral or written) between you and Visionworks with respect to their subject matters.
>
> (Ex. 3, Mar. 2024 Terms, § 19) (emphasis added).

The Jan. 2018 Privacy Policy and Mar. 2022 Privacy Policy require mandatory mediation for any dispute or claim arising out of the Website or its features:

> You also agree that, in the event **any dispute or claim arises out of or relating to your use of the Site or the Site Features or this Privacy Policy** that you and Visionworks will attempt in good faith to negotiate a written resolution of the matter directly between the parties. You agree that if the matter remains unresolved for forty-five (45) days after notification (via certified mail or personal delivery) that a dispute exists**, all parties shall join in mediation services in Bexar County, Texas with a mutually agreed mediator in an attempt to resolve the dispute**. **Should you file any arbitration claims, or any administrative or legal actions without first having attempted to resolve the matter by mediation, then you agree that you will not be entitled to recover attorneys' fees, even if you would otherwise be entitled to them.**
>
> (Ex. 4, Jan. 2018 Privacy Policy, § 7; Ex. 5, Mar. 2022 Privacy Policy, p. 4) (emphasis added).

The Feb. 2024 Terms require mandatory arbitration and waive participation in a class action for any and all disputes, claims or controversies arising from or related to the use of the Website:

> THESE TERMS INCLUDE A CLASS ACTION WAIVER, A JURY TRIAL WAIVER AND A REQUIREMENT THAT ALL DISPUTES BETWEEN YOU AND VISIONWORKS AND ITS AFFILIATES AND SUBSIDIARIES REGARDING THIS AGREEMENT OR YOUR USE OF THE SITES, BE RESOLVED BY BINDING ARBITRATION ON AN INDIVIDUAL BASIS.

16. AGREEMENT TO BINDING ARBITRATION AND CLASS ACTION WAIVER.

**THIS SECTION AFFECTS YOUR LEGAL RIGHTS – PLEASE READ THIS SECTION CAREFULLY.**

16.1 Subject to the exceptions listed in 16.4 below, any and all disputes, claims or controversies between you and Visionworks, its affiliates and subsidiaries arising from or related to these Terms of Use, your use of the Sites or your use of any products or services sold through the Sites, will be resolved by binding arbitration, instead of in court. This agreement to arbitrate is intended to be interpreted broadly. Certain rights that you would have if you went to court, such as discovery and the right to an appeal may be limited or unavailable in arbitration.

16.2 YOU AGREE THAT BY ENTERING INTO THIS AGREEMENT YOU HEREBY IRREVOCABLY WAIVE YOUR RIGHT TO MAINTAIN A COURT ACTION, THE RIGHT TO A JURY TRIAL, THE RIGHT TO BRING OR PARTICIPATE IN ANY CLASS, COLLECTIVE OR OTHER REPRESENTATIVE CLAIM OR ACTION. ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED.

16.3 Arbitration will be governed by the Consumer Arbitration Rules of the American Arbitration Association (“AAA Rules”), as modified by this section 16.3. The AAA Rules are available at www.adr.org or by calling 1-800-778-7879. You and we hereby waive any right to a jury trial of any dispute or claim [ . . . ]

16.4 Notwithstanding the foregoing, (1) either party may elect to have an individual claim heard in small claims court consistent with any applicable jurisdictional and monetary limits that may apply, provided that it is brought and maintained as an individual claim and is not appealed or removed to any court of general jurisdiction; and (2) either party may bring suit in court to enjoin infringement or misappropriation of intellectual property rights.

(Ex. 2, Feb. 2024 Terms, § 16).

The Mar. 2024 Terms similarly require mandatory arbitration and waive participation in a class action for any and all disputes, claims or controversies arising from or related to the use of the Website:

**Introduction**:
YOUR AGREEMENT TO THESE TERMS OF USE INCLUDES, BUT IS NOT LIMITED TO, CONDUCTING THIS TRANSACTION ELECTRONICALLY AND ACCEPTING THE LIMITATIONS ON DAMAGES AND LIMITATIONS ON VISIONWORKS LIABILITY, THE REQUIREMENT THAT ALL

DISPUTES BETWEEN YOU AND VISIONWORKS AND ITS AFFILIATES AND SUBSIDIARIES REGARDING THIS AGREEMENT OR YOUR USE OF THE SITES BE RESOLVED BY BINDING ARBITRATION ON AN INDIVIDUAL BASIS, A CLASS ACTION WAIVER, JURY TRIAL WAIVER, A CHOICE OF TEXAS LAW EXCEPT AS OTHERWISE PROVIDED HEREIN. [. . . ]

**Section 3**:
DISPUTE RESOLUTION (INCLUDING INFORMAL DISPUTE RESOLUTION; BINDING ARBITRATION, CLASS ACTION WAIVER, JURY TRIAL WAIVER)

Please read this section carefully —it significantly affects your legal rights, including your right to file a lawsuit in court.

[ . . . ] Therefore, for any problem, claim, or dispute that you may have with or against Visionworks (a "Dispute," as defined below), you acknowledge and agree that you will first give Visionworks an opportunity to informally resolve your Dispute as set forth below in this section. Visionworks agrees that it will do the same as to any Dispute that it might have with you. "Dispute" shall be interpreted broadly and shall include any dispute, claim or controversy between you and Visionworks, its affiliates and subsidiaries arising out of or relating to this Agreement, your access or use of the Sites, your use of any products or services sold through the Sites or your relationship with Visionworks whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory. Dispute shall include: (a) any dispute or claim that arose before the existence of this or any prior Agreement (including any claims related to advertising); (b) any dispute or claim that is currently the subject of any class action litigation in which you are not a member of a certified class; and (c) any dispute or claim that may arise after termination of this Agreement. Dispute, however, does not include disputes or claims concerning patents, copyrights, trademarks, and trade secrets, publicity, and claims of piracy or unauthorized use of intellectual property. The arbitrator shall decide all issues except the following (which are for a court of competent jurisdiction to decide): (a) issues that are reserved for a court in this Agreement and (b) issues that relate to the validity and enforceability of the arbitration agreement. This Agreement and the arbitration agreement do not prevent you from bringing a Dispute to the attention of a government agency.

**(a)** MANDATORY INFORMAL DISPUTE RESOLUTION PROCESS

Before submitting a demand for arbitration in accordance with the provisions set forth in this section, if either you or Visionworks has a Dispute with the other party, that party shall first provide the other party with a written notice related to that Dispute ("Notice"). If you have a Dispute with Visionworks, you agree to provide Visionworks with the Notice by sending the Notice by certified mail to the following address: Visionworks, Attn: Legal Department, 175 E. Houston Street,

San Antonio, Texas 78205, or in accordance with the Notice provisions of this Agreement. [ . . . ]

During the informal dispute resolution process, should the party receiving the Notice make a request, both parties shall participate in an individualized telephonic settlement conference to facilitate potential resolution of the Dispute. You agree to personally attend any such conference (along with counsel if represented) if Visionworks makes such a request, and we agree to have a Visionworks representative personally attend any such conference (along with counsel if represented) if you make such a request. You and we agree to negotiate in good faith in an effort to resolve any Dispute. This should lead to resolution, but if for some reason the Dispute is not resolved satisfactorily within sixty (60) days after receipt of a compliant Notice, you and we agree to the further dispute resolution provisions below. Both you and we agree that this informal dispute resolution process is mandatory and a condition precedent that must be satisfied before initiating arbitration. Any applicable limitations period (including statutes of limitations) will be tolled for 60 days from the time a fully compliant Notice is served on the other party unless the parties mutually agree to extend that period. A court of competent jurisdiction shall have the power to enforce this condition precedent to arbitration, including the power to enjoin the filing or prosecution of arbitration and the assessment and collection of arbitration fees. If the sufficiency of a Notice or compliance with this informal dispute resolution process is at issue and a party elects to have that issue decided by a court, then any arbitration shall be automatically stayed pending resolution of that issue. Nothing in this paragraph limits the right of a party to seek damages for non-compliance with this mandatory informal process in arbitration. You or Visionworks may commence arbitration if the Dispute is not resolved through this process.

**(b)** AGREEMENT TO BINDING INDIVIDUAL ARBITRATION.
You and Visionworks agree that subject to the limited exceptions set forth in this Agreement, the sole and exclusive forum for any and all Disputes between you and Visionworks shall be final and binding individual arbitration.

[ . . .]

**(d)** ARBITRATION PROCEDURES.

You and Visionworks acknowledge that this section of the Agreement affects interstate commerce and that the Federal Arbitration Act (“FAA”) and federal arbitration law (and not state arbitration law) apply (despite any other choice of law provision).

[. . . ]

YOU AND WE AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A

> PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, COLLECTIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING IN ARBITRATION OR IN LITIGATION. FURTHER, UNLESS YOU OR WE AGREE OTHERWISE, THE ARBITRATOR MAY NOT CONSOLIDATE ANY PERSON'S OR ENTITY'S CLAIMS WITH THOSE OF ANOTHER PERSON OR ENTITY AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A CLASS, REPRESENTATIVE, COLLECTIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING. IF AFTER EXHAUSTION OF ALL APPEALS ANY OF THESE PROHIBITIONS ON NON-INDIVIDUALIZED RELIEF; CLASS, REPRESENTATIVE, COLLECTIVE, AND PRIVATE ATTORNEY GENERAL CLAIMS; AND CONSOLIDATION IS FOUND TO BE UNENFORCEABLE AS TO A PARTICULAR CLAIM OR WITH RESPECT TO A PARTICULAR REQUEST FOR RELIEF (SUCH AS A REQUEST FOR INJUNCTIVE RELIEF), THEN THE PARTIES AGREE THAT SUCH A CLAIM OR REQUEST FOR RELIEF SHALL BE DECIDED BY A COURT AFTER ALL OTHER CLAIMS AND REQUESTS FOR RELIEF ARE ARBITRATED.
>
> [ . . .]
>
> CLASS ACTION WAIVER AND JURY TRIAL WAIVER.
> You and Visionworks each agree that any proceeding, whether in arbitration or litigation in court, will be conducted only on an individual basis and not in a class, collective, consolidated, private attorney general, or representative action. You and we agree to waive any right to bring or to participate in such an action in arbitration or in court to the fullest extent permitted by applicable law. Notwithstanding the foregoing, the parties retain the right to participate in a class-wide settlement.
>
> To the fullest extent permitted by law, you and Visionworks waive the right to a jury trial.
>
> (Ex. 3, Feb. 2024 Terms, § 3).

## III. LEGAL ARGUMENT

### A. Plaintiffs Are Compelled To Mediate By The Website Terms.

In deciding motions to compel mediation, Fifth Circuit courts utilize the same analysis adopted for motions to compel arbitration. *See Brady v. St. John the Baptist Par. Council*, No. 14-1613, 2014 U.S. Dist. LEXIS 127333, at *3 n.1 (E.D. La. 2014); *Quick Print of New Orleans, Inc. v. Danka Office Imaging Co.*, No. Civ.A. 04-644, 2004 U.S. Dist. LEXIS 12182, at *4-5 (E.D. La. 2004) (citing *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1072 (5th Cir. 2002)).

Enforcement of an arbitration (or mediation) agreement involves two steps. *See Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 201 (5th Cir. 2016). The first is whether the parties entered into an arbitration agreement in the first place. *Id.* The second step is to determine whether the claim at issue is covered by the arbitration agreement. *Id.* The contract formation step is decided based on state-law principles that govern contract formation -- in this case, Texas. *See* Exs. 1-3 (All Website Terms provide for choice of Texas law); *Kubala*, 830 F.3d at 202; *Kennedy v. Equifax Info. Servs. LLC*, No. SA-23-CV-00470-FB, 2023 U.S. Dist. LEXIS 222967, at *8 (W.D. Tex. 2023). The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Walker v. Neutron Holdings, Inc.*, No. 1:19-CV-574-RP, 2020 U.S. Dist. LEXIS 24845, at *6 (W.D. Tex. 2020) (citing *Grant v. Houser*, 469 F. App'x. 310, 315 (5th Cir. 2012)). Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration (or mediation) to assert a reason that the arbitration agreement is unenforceable. *Kennedy*, 2023 U.S. Dist. LEXIS 222967, at *3-4.

The Website Privacy Policies[4] require mandatory mediation "in Bexar County, Texas with a mutually agreed mediator" for "any dispute or claim aris[ing] out of or relating to your use of the Site." *See supra*, Section II, Exs. 4 (§ 7) and 5 (p. 4). Contrary to this provision, Plaintiffs instituted this suit instead of engaging in the mediation to which they have assented. Therefore, because there is a valid contract formed between Plaintiffs and Defendant containing a mandatory mediation provision which covers all Plaintiffs' claims, this Court should dismiss this case and compel Plaintiffs to mediate. *See Office VP, LLC v. Ideal Health, Inc.*, No. A-11-CV-741 LY, 2012 U.S. Dist. LEXIS 30473, at *18-19 (W.D. Tex. 2012) (recommending district court stay

---

[4] The Website Terms expressly incorporate the Website Privacy Policies by reference. *See supra*, Section II. Additionally, the Mar. 2024 Terms require mediation before a party can initiate arbitration. Ex. 3, § 3(a).

litigation and compel mediation based on a contractual provision), *report and recommendation adopted in relevant part*, 2012 U.S. Dist. LEXIS 204203, at *5 (W.D. Tex. 2012); *Wholesale Gadget Parts, Inc. v. Glob. Cellular, Inc.*, No. 17-CV-4-JHP-TLW, 2017 U.S. Dist. LEXIS 157097, at *15 (N.D. Okla. 2017) ("In light of the plain, unambiguous language in [the contract], and the statement of intent to engage in specific dispute resolution methods…the parties are required to engage in the dispute resolution process outlined in the Agreement."); *Quick Print*, 2004 U.S. Dist. LEXIS 12182, at *9 ("Any litigation arguably arising under… [an arbitration] clause should be stayed pending the arbitrator's decision as to whether the dispute is covered.") (quoting *Texaco Exploration and Production Co. v. AmClyde Engineered Products Co., Inc.*, 243 F.3d 906, 908 (5th Cir. 2001)).

**1. The Website Terms Are Valid And Enforceable.**

As plead in the Complaint, users of the Website are presented with the Website Terms upon visiting the Website. (Cmplt., ¶ 146). Plaintiffs characterize the Website Terms as "browsewrap."[5] (*Id.*). Unlike a traditionally executed contract, in a browsewrap agreement, "a party instead gives his assent simply by using the website." *DHI Grp., Inc. v. Kent, Nos.*, 21-20474, 2022 U.S. App. LEXIS 24585, at *11 n.11 (5th Cir. 2022) (*quoting Southwest Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B, 2007 U.S. Dist. LEXIS 96230 (N.D. Tex. Sept. 12, 2007)). "Browsewrap" agreements are enforced by courts where the user has actual or constructive knowledge of a site's terms and conditions prior to using the site. *Sw. Airlines*, 2007 U.S. Dist. LEXIS 96230, at *15-16; *see also Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018) ("Although

[5] Plaintiffs' allegations are scarce and vague regarding the individual Plaintiffs' experience navigating and interacting with the Website, making it difficult for Defendant and the Court to ascertain through what mechanism they may have been presented with the Website Terms, *i.e.*, "browsewrap," "clickwrap" or "sign-in-wrap." Defendant does not concede that Plaintiffs were only presented with a "browsewrap" version of the Website Terms and reserves all related arguments and defenses pending discovery.

clickwraps present a far simpler determination for a court given the express and unambiguous manifestation of assent through the 'click' of an 'I accept' button, courts have also found browsewrap agreements valid and enforceable so long as there is some form of reasonably conspicuous notice. In other words, browsewrap agreements are not presumptively unenforceable.") (applying New York contract law principles).

In this case, the answer is simple: Plaintiffs have plead actual knowledge of the Website Terms. *Reis, Inc. v. Spring11 LLC*, 2016 U.S. Dist. LEXIS 131486, at *34 (S.D.N.Y. 2016) (finding actual knowledge of browsewrap agreement based upon plaintiff's own factual allegations in the amended complaint). Per their Complaint, Plaintiffs have "entered into an express contract . . . in the form of Visionworks Terms of Use on the Website" (Cmplt., ¶ 245) and "would not have used the Website in the absence of an express contract between them" (Cmplt., ¶ 248). In short, Plaintiffs have plead that they were aware and have read the respective Website Terms *before* deciding to engage with the Website. Any contention that Plaintiffs are not bound to the mandatory mediation contained in the Website Terms would lead to a facially inequitable result because Plaintiffs obtained the benefit of the Website Terms through their use of the Website and further seek to enforce the Website Terms against Defendant. (Cmplt. ¶¶ 235-252); *May v. Expedia, Inc.*, No. A-16-CV-1211-RP, 2018 U.S. Dist. LEXIS 167118, at *10-11 (W.D. Tex. 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 167121 (W.D. Tex. Aug. 27, 2018) (finding the plaintiff equitably estopped from avoiding an arbitration provision because he knowingly obtained benefits from the agreement containing it).

However, even setting aside Plaintiffs' admissions in their pleadings and equitable estoppel, the hyperlinks to the Website Terms and Website Privacy Policy are conspicuous enough

to put a reasonably prudent person on inquiry notice. Here, a reasonably prudent person has numerous opportunities to encounter both the Website Terms and Website Privacy Policy:

- A user is, and has been since at least September 28, 2019, required to affirmatively assent via check-box to both the Website Terms and Website Privacy Policy when creating an online account on the Website. (Ex. 6, Visionworks.com Account Creation Screenshot; Ex. A, ¶ 17);
- The Website Terms are, and have been since at least January 1, 2018, hyperlinked at the bottom of the Website's homepage and all sub-pages. (Ex. 7, Visionworks.com Home Page; Ex. A ¶¶ 10-12); and
- The Website Terms are currently provided in a blue and underlined hyperlink in a prominent notice banner upon visiting the Website. (Ex. 7, Visionworks.com Home Page).

Plaintiffs' lack of factual specificity has made investigation into their allegations difficult. However, Defendant's internal investigation (so far) has revealed that, at a minimum, Plaintiffs Sharma and Stieve have created user accounts with the Website. (Ex. A, ¶¶ 15-16). A user cannot create a user account with the Website unless they affirmatively check a box next to the sentence "Check this box to show that you understand Visionworks Terms of Use and Privacy Policy." (Ex. A, ¶ 17, Ex. 6). The phrases "Terms of Use" and "Privacy Policy" are highlighted in the color red, juxtaposed against a white background and dark blue surrounding lettering (Ex. 6), and the then-applicable Website Terms and Website Privacy Policy are linked therefrom (Ex. A, ¶¶ 10-14). Therefore, at least Plaintiffs Sharma and Stieve have assented to "clickwrap" Website Terms, which are enforced by courts in similar contexts. *See Walker*, 2020 U.S. Dist. LEXIS 24845, at *8-9 (noting that courts enforce sign-in wrap agreements where the user had reasonable notice of the existence of the terms); *Phillips v. Neutron Holdings, Inc.*, 2019 U.S. Dist. LEXIS 171313, at *13 (N.D. Tex. Oct. 2, 2019) (enforcing a user agreement found in a hyperlink where the court

found the notice to be legible, and that the hyperlinked words "User Agreement & Terms of Service" in dark, bold font stood out from both the white screen and preceding gray text).

For example, in *May v. Expedia, Inc*., the court considered a website registration page that required the user to click a "Continue" button to complete the transaction, and displayed a notice directly above the "Continue" button that informed the user: "By clicking 'Continue' you are agreeing to our Terms and Conditions and Privacy Policy." 2018 U.S. Dist. LEXIS 167118, at *9. The court concluded that the fact that the terms and conditions and privacy policy links "were in blue, as opposed to black, font to indicate they were hyperlinks" and therefore "sufficient to put [the plaintiff] on notice that by continuing the transaction he was agreeing to the then-in-effect Terms and Conditions and to bind him." *Id.* at *9-10 (citations omitted). This is very similar to the Website account creation mechanism, except that the Website goes a step further by requiring an affirmative action (checking a box) by the user to ensure an opportunity to review the Website Terms and Website Privacy Policy before continuing.

At any rate, Plaintiffs plead that they visited the Website multiple times. (Cmplt., ¶¶ 24 - 27) (including the phrases "visits to the Website" and "various times"). They had multiple opportunities to review the Website Terms (and, in fact, plead that they have) and therefore should be bound by them, even if they have not reviewed them. *Barnett v. Network Solutions, Inc.*, 38 S.W. 3d 200, 204 (Tex. Ct. App.—Eastland 2001, pet. denied) (holding that a party with notice of and opportunity to review contract terms is bound by those terms even where the party has not read them, and "[t]he same rule applies to contracts which appear in an electronic format").

**2. Plaintiffs' Claims Are Subject To Mediation.**

The Website Privacy Policies require mandatory mediation of "any dispute or claim aris[ing] out of or relating to your use of the Site or the Site Features or this Privacy Policy. . . ."

*See supra*, Section II. Plaintiffs' counts all arise from the alleged improper use of tracking tools on the Website. (Cmplt., ¶¶ 1-23). Therefore, the mediation provisions cover Plaintiffs' claims.

**B. Absent Putative Class Members Who Submitted Web Browsing Information Through The Website On Or After February 22, 2024 Cannot Bring Claims In This Action.**

The Feb. 2024 Terms, effective February 22, 2024, require mandatory arbitration for all claims arising out of use of the Website and include a class action waiver. The Feb. 2024 Terms were replaced by the Mar. 2024 Terms, effective March 8, 2024[6], which similarly require mandatory arbitration for all claims arising out of use of the Website and include a class action waiver. *See supra*, Section II.

The Federal Arbitration Act (FAA) applies to contracts involving interstate commerce that contain or are subject to a written agreement to arbitrate. *Grant v. Houser*, 469 F. App'x 310, 313 (5th Cir. 2012) (citing 9 U.S.C. §§ 1-2). As an agreement involving the use of an Internet website, the Website Terms (and the incorporated Website Privacy Policies) implicate interstate commerce and therefore the FAA applies. *See United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("[A]s both the means to engage in commerce and the method by which transactions occur, the Internet is an instrumentality and channel of interstate commerce."); *Hofer v. Emley*, No. 19-CV-02205-JSC, 2019 U.S. Dist. LEXIS 161377, at *35 (N.D. Cal. Sept. 20, 2019) (finding agreement affected interstate commerce and the FAA applied because plaintiff had to access the internet using his smartphone in order to engage with the company). Further, the Mar. 2024 Terms explicitly agree that the agreement "affects interstate commerce and that the Federal Arbitration Act ('FAA') and federal arbitration law (and not state arbitration law) apply." Ex. 3, § 3(d).

---

[6] When originally posted, the Mar. 2024 Terms erroneously listed a "February 8, 2024" effective date. This has since been corrected to "March 8, 2024."

"Under the Federal Arbitration Act [FAA], parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Walker*, 2020 U.S. Dist. LEXIS 24845, at *3-4 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019)). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This permits a party to file a motion to compel arbitration when an opposing party "has failed, neglected, or refused to comply with an arbitration agreement." *American Bankers Insurance Co of Florida v Inman*, 436 F3d 490, 493 (5th Cir 2006).

As discussed above, enforcement of an arbitration agreement involves two steps. *See Kubala*, 830 F.3d at 201. The first is contract formation—whether the parties entered into any arbitration agreement at all. *Id.* The Website Terms are valid and enforceable against Plaintiffs. *See supra*, Section III(A). The second step is to determine arbitrability—whether the claim at issue is covered by the arbitration agreement. *Kubala*, 830 F.3d at 201. The second step is a question for the Court unless the agreement delegates the arbitrability issue to an arbitrator. *Id*. at 203. The court must compel arbitration if both elements are satisfied unless there is a federal statute or policy to the contrary. *See Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir 2008). Both prongs of this test is satisfied here and the Court should require that all claims

relating to Plaintiffs' use of the Website on or after February 22, 2024 be individually arbitrated and, further, strike any allegations in the Complaint that seek to assert such claims against Defendant, either by the named Plaintiffs or by absent putative class members.

### 1. Arbitrability Of Plaintiffs' Claims Under The Feb 2024 And Mar. 2024 Terms Is An Issue For The Arbitrator.

Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself. *See Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010). However, courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so. *See First Options of Chi., Inc. v. Kaplan*, 115 S. Ct. 1920, 1922 (1995). The Feb. 2024 Terms specify that "Arbitration will be governed by the Consumer Arbitration Rules of the American Arbitration Association ('AAA Rules')." Ex. 2, § 16. Fifth Circuit courts generally hold that stipulating that the AAA Rules will govern the arbitration of disputes constitutes "clear and unmistakable" evidence of the parties intent to arbitrate threshold questions. *See, e.g.*, *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 674-75 (5th Cir. 2012); AAA Consumer Arbitration Rules, R-14. Jurisdiction, effective Sept. 1, 2014, *available at* adr.org/consumer. The Mar. 2024 Terms state that "the arbitrator shall decide all issues except the following (which are for a court of competent jurisdiction to decide): (a) issues that are reserved for a court in this Agreement and (b) issues that relate to the validity and enforceability of the arbitration agreement" in addition to specifying that arbitration shall be administered by "then-current AAA Consumer Arbitration Rules." Ex. 3, § 3. As such, under both the Feb. 2024 Terms and Mar. 2024 Terms, the question of arbitrability falls to the arbitrator and not this Court.

**2. Even If Arbitrability Was Not Delegated To The Arbitrator, Plaintiffs' Claims Clearly Fall Under The Scope Of The Arbitration Provisions Of The Feb 2024 And Mar. 2024 Terms.**

Once the court determines that there is a valid arbitration agreement (as it should do here), the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Walker*, 2020 U.S. Dist. LEXIS 24845, at *6 (*citing Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004)). As the U.S. Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am*., 106 S. Ct. 1415, 1419 (1986).

Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or that the claims are outside of the agreement's scope. *Walker*, 2020 U.S. Dist. LEXIS 24845, at *6 (citing *Carter v. Countrywide Credit Indus., Inc*., 362 F.3d 294, 297 (5th Cir. 2004)). The arbitration provisions in the Feb. 2024 Terms and Mar. 2024 require any absent putative class members to submit to arbitration of claims arising from the Website. As such, "[b]y its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. *Dean Witter Reynolds Inc. v. Byrd*, 105 S. Ct. 1238, 1239 (1985) (emphasis original).

**i. The Feb. 2024 And Mar. 2024 Terms Require Mandatory Arbitration For Plaintiffs' Claims.**

The Feb. 2024 and Mar. 2024 Terms both broadly require mandatory arbitration for any and all disputes, claims or controversies arising from or related to the use of the Website. *See supra*, Section II. The broad nature of these arbitration clauses indicates that the parties intended

these claims to be subject to arbitration.[7] *Sharju Ltd. P'ship v. Choice Hotels Int'l, Inc.*, No. 3:01-CV2605-X, 2002 WL 107171, at *2 (N.D. Tex. Jan. 22, 2002) ("[T]he strong presumption in favor of arbitrability applies even with greater force when the parties choose a broad arbitration clause.") (internal citations and quotation marks omitted). All claims under the Complaint arise from Plaintiffs' use of the Website, and therefore fall under the mandatory arbitration provisions.

**ii. Plaintiffs' Claims Are Arbitrable.**

No federal statute or policy prevents the arbitration of the claims at issue and therefore the claims are arbitrable and should be sent to arbitration.

**iii. The Feb. 2024 And Mar. 2024 Terms' Class Action Waiver Should be Enforced.**

Class action waiver provisions contained in arbitration clauses are enforceable. The Texas Supreme Court has made clear that a class action is a procedural device and does not "enlarge or diminish" any substantive rights. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2002). The Fifth Circuit has also concluded that class action waivers are enforceable under Texas law. *See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174 (5th Cir. 2004) ("[T]his court recently rejected an argument that an arbitration clause prohibiting plaintiffs from proceeding collectively was unconscionable under Texas law.").

The purported claims on behalf of absent putative class members who purportedly submitted web browsing information through the Website on or after February 22, 2024 are precluded by their agreement, pursuant to the Feb. 2024 Terms and the Mar. 2024 Terms, not to participate in a class action and to arbitrate their claims. Those claims should therefore be struck

[7] Both the Feb. 2024 and Mar. 2024 Terms explicitly state that scope of arbitration provisions are to be construed "broadly." Ex. 2, § 16.4 ("This agreement to arbitrate is intended to be interpreted broadly") and Ex. 3, § 3 ("Dispute shall be interpreted broadly . . . ").

from this case. *See* Fed. R. Civ. P. 23(d)(1)(D) ("In conducting an action under this rule, the court may issue orders that: … (D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."); *Kay v. Wells Fargo & Co. N.A.*, No. C 07-01351 WHA, 2007 U.S. Dist. LEXIS 55519, at *16 (N.D. Cal. 2007) (granting defendant's motion to strike certain class allegations related to putative class members before class certification under Fed. R. Civ. P. 23(d)(1)(D) and Fed. R. Civ. P. 12(f)).

### C. All Claims Are Subject To Mediation Or Arbitration (Or Both), And Therefore Should Be Dismissed.

The Fifth Circuit has repeatedly held that "when all of the issues raised in the district court must be submitted to arbitration," dismissal is appropriate. *Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc*., 729 F.3d 443, 447 n.1 (5th Cir. 2013) ("[W]e are bound by our precedent which states that dismissal is appropriate 'when all of the issues raised in the district court must be submitted to arbitration.'") (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *Ascension Orthopedics, Inc. v. Curasan AG*, No. 1:06-cv-424-LY, 2006 WL 3257723, at *1 (W.D. Tex. Oct. 26, 2006) ("[T]his Court finds that all of the issues raised in this cause must be submitted to arbitration. The Court will therefore dismiss the case with prejudice."). Because all of the issues in this case are subject to either mandatory mediation or arbitration, the Court should dismiss this case with prejudice.[8]

## IV. CONCLUSION

Pursuant to Texas and Federal law, mediation and arbitration are enforced when expressly provided by contract, as is the case here. Plaintiffs and Defendant have binding contracts that provides for mediation and arbitration of Plaintiffs' claims, and Plaintiffs should be required to

---

[8] In the alternative, and only to the extent the Court determines dismissal is inappropriate, Defendant requests that the Court stay this case pending the outcome of arbitration and mediation.

comply with their agreement. However, to the extent this Court declines to dismiss or stay any of Plaintiffs' claims as requested in this Motion, Defendant respectfully requests that this Court consider the Defendant's Rule 12(b)(1) and (6) Motion to Dismiss for such claims.

Dated: May 29, 2024

Respectfully submitted,

VISIONWORKS OF AMERICA, INC.

By: /s/ *J. Daniel Harkins*
One of Its Attorneys

DYKEMA GOSSETT PLLC
J. Daniel Harkins
*dharkins@dykema.com*
112 Pecan St., Ste. 1800
San Antonio, TX 78205
Tel: (210) 554-5500
Fax: (866) 219-7593

Cinthia Granados Motley (*pro hac vice*)
*cmotley@dykema.com*
10 S. Wacker Dr., Ste. 2300
Chicago, IL 60606
Tel.: (312) 876-1700
Fax: (312) 876-1155

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for Defendant conferred with counsel for Plaintiffs on May 24, 2024 and did not reach an agreement regarding the subject matter of this Motion.

By: /s/ *Cinthia Granados Motley*

One of Defendant's Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 29, 2024.

By: /s/ *J. Daniel Harkins*

One of Defendant's Attorneys