**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

SAURAV SHARMA, DIANE YOUNG, JAIME STIEVE, and GEORGE DEAN on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

VISIONWORKS OF AMERICA, INC.,

Defendant.

Case No.:5:24-cv-00206-FB

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT VISIONWORKS OF AMERICA, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

III. LEGAL STANDARD .......... 4

IV. ARGUMENT .......... 5

A. Plaintiffs have adequately pleaded Article III standing. .......... 5

1. Plaintiffs have adequately pleaded an injury. .......... 5

2. Plaintiffs have alleged that their harms were caused by Defendant's conduct. .......... 6

3. Plaintiffs' injuries are redressable. .......... 7

4. Plaintiffs have standing for injunctive relief. .......... 8

B. Defendant disclosed Plaintiffs' PHI. .......... 8

C. Plaintiffs' Intrusion Upon Seclusion Claims Were Adequately Pled. .......... 10

D. Plaintiffs Have Adequately Pled Claims Under the Federal Wiretap Act and the State Wiretap Acts. .......... 12

1. The party exception does not apply to Visionworks for the Federal and Texas Wiretap Acts. .......... 13

2. The crime-tort exception applies to enforce Visionworks's liability .......... 14

3. Plaintiffs' Pennsylvania WESCA Claim Was Adequately Pled. .......... 17

E. Plaintiffs' State Law Claims Are Not Preempted. .......... 17

F. Plaintiffs Adequately Allege A Breach of Implied Contract. .......... 19

V. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Cases**

*Agnew v. Dupler*,
553 Pa. 33 (Pa. 1998) ........ 17

*American Hospital Association v. Becerra*,
No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ........ 10

*Amin v. UPS*,
66 F.4th 568 (5th Cir. 2023) ........ 10, 12

*B.K. v. Desert Care Network*,
No. 2:23-cv-05021, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 16

*B.K. v. Eisenhower Medical Center ("Eisenhower I")*,
No. 23-cv-2092, 2024 WL 878100, (C.D. Cal. Apr. 11, 2024) ........ 15

*B.K. v. Eisenhower Medical Center* ("*Eisenhower II*"),
No. 23-cv-2092, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ........ 15

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023) ........ 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Bradix v. Advance Stores Co.*,
No. 16-4902, 2016 WL 3617717, at *3 (E.D. La. July 6, 2016) ........ 7

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........ 8

*Cousin v. Sharp Healthcare*,
2023 U.S. Dist. LEXIS 206638 (S.D. Cal. Nov. 17, 2023) ........ 2

*Cranor v. 5 Star Nutrition, L.L.C.*,
998 F.3d 686 (5th Cir. 2021) ........ 5

*Cruz v. Abbott*,
849 F.3d 594 (5th Cir. 2017) ........ 5

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. Sep. 4, 2020) ........ 18

*Doe v. High-Tech Institute, Inc.*,
972 P.2d 1060 (Colo. App. 1998) ........ 11

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .......... 2

*Doe v. Regents of the Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. May 6, 2023) .......... 2, 11

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 5

*Electrostim Med. Servs. v. Health Care Serv. Corp.*,
614 F. App'x 731 (5th Cir. 2015) .......... 19

*Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*,
695 F.3d 330 (5th Cir. 2012) .......... 8

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22 C 5891, 2023 WL 7386060,
(N.D. Ill. Nov. 8, 2023) .......... 12

*Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*,
480 S.W.2d 607 (Tex. 1972) .......... 19

*Hazlewood v. Netflix, Inc.*,
No. 3:23-CV-1109-N, 2023 WL 6771506 (Oct. 11, 2023) .......... 4, 5

*Hous. Chronicle Publ'g Co. v. City of League City*,
488 F.3d 613 (5th Cir. 2007) .......... 5

*Hovanec v. Miller*,
No. SA-17-CV-766-XR, 2018 WL 1221486 (W.D. Tex. Mar. 7, 2018) .......... 10

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023) .......... 2, 17

*In re Grp. Health Plan Litig.*,
No. 23-cv-267, 2023 WL 8850243 (D. Minn. Dec. 21, 2023) .......... 16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 10, 11, 16

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 12

*India Price v. Carnival Corporation*,
No. 23-cv-236, 2024 WL 221437 (S.D. Cal. Jan. 19, 2024) .......... 19

*Kane v. Univ. of Rochester*,
2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) .......... 2

*Kane v. Univ. of Rochester*,
No. 23-CV-6027, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......... 16

*Kirsten v. California Pizza Kitchen, Inc.*,
No. 2:21-CV-09578, 2022 WL 16894503 (C.D. Cal. July 29, 2022) .......... 20

*Kurowski v. Rush Sys. for Health ("Rush II")*,
683 F. Supp. 3d 836 (N.D. Ill. July 24, 2023) .......... 9, 14

*Kurowski v. Rush System for Health* ("*Rush III*"),
No. 22 C 5380, 2023 WL 8544084,
(N.D. Ill. Dec. 11, 2023) .......... 15

*Madzimoyo v. Bank of N.Y. Mellon Tr. Co., N.A.*,
440 F. App'x 728 (11th Cir. 2011) .......... 18

*Marshall v. Georgia CVS Pharmacy, L.L.C.*,
580 F. Supp. 3d 1301 (N.D. Ga. Jan. 7, 2022) .......... 18

*McCulley v. Banner Health,*
2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) .......... 2

*McCulley v. Banner Health*,
No. 2:23-cv-00985-SPL (D. Ariz.), Dkt. 43 .......... 16

*Mekhail v. N. Mem'l Health Care*,
No. 23-CV-00440, 2024 WL 1332260 (D. Minn. Mar. 28, 2024) .......... 16

*Mekhail v. N. Mem'l Health Care,*
2024 U.S. Dist. LEXIS 55880 (D. Minn. Mar. 28, 2024) .......... 2

*Noviello v. Holloway Funding Group*,
No. 3:22-cv-52-BN, 2023 WL 128395 (N.D. Tex. Jan. 9, 2023) .......... 11

*Oliver v. Rowan*,
No. 05-19-01433-CV, 2021 WL 2948554 (Tex. App. – Dallas June 29, 2021) .......... 13

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) .......... 5

*Peruto v. Roc Nation*,
385 F. Supp. 3d 384 (E.D. Pa. June 12, 2019) .......... 17

*Petris v. Sportsman's Warehouse, Inc.*,
No. 2:23-cv-1867, 2024 WL 2817530 (W.D. Pa. June 3, 2024) .......... 5

*R.C. v. Walgreen Co.*,
No. 23-cv-1933, 2024 WL 2263395 (C.D. Cal. May 9, 2024) .......... 15

*Schnur v. JetBlue Airways Corporation*,
No. 2:22-cv-1621, 2024 WL 2816552 (W.D. Pa. June 3, 2024) ............................................. 19

*Smith v. Google LLC*,
No. 23-cv-03527-PCP, 2024 WL 2808270 (N.D. Cal. June 3, 2024) ..................................... 13

*Spokeo v. Robins*,
578 U.S. 330 (2016) ........................................................................................................ 5

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) ......................................................................................... 14

*Sweat v. Houston Methodist Hospital*,
No. H-24-775, 2024 WL 3070184 (S.D. Tex. June 20, 2024) .................................... 11, 12, 14

*TransUnion, LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................................................ 6

*Valenzuela v. Aquino*,
853 S.W.2d 512 (Tex. 1993) ........................................................................................... 10

*Valenzuela v. Keurig Green Mountain, Inc.*,
No. 3:22-cv-09042-JSC, 2023 WL 6609351 (N.D. Cal. Oct. 10, 2023) .................................... 6

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ........................................................................................................ 5

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) ........................................................................................... 18

**Statutes**

18 U.S.C. § 2511(2)(d) ................................................................................................. 11
18 U.S.C. § 2710(8) ....................................................................................................... 19
720 ILCS 5/14-2(a)(3) .................................................................................................... 20
R.S. Mo. § 542.402.2(3) ................................................................................................. 11

**Rules**

*Health Insurance Portability and Accountability Act* (HIPAA) .................................................... 6

*Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules Under the Health Information Technology for Economic and Clinical Health Act and the Genetic Information Nondiscrimination Act*,
78 F.R. 5642 (Jan. 25, 2013) ........................................................................................... 16

# I. INTRODUCTION

Defendant Visionworks of America, Inc. ("Visionworks" or "Defendant")[1] "is self-described as a leading provider of eye care services in the U.S., sitting at the intersection of healthcare and retail."[2] In its words, to accomplish this goal, Visionworks "brings ***healthcare expertise*** backed with a network of Optometrists and technicians as well as retail associates ready to fulfill vision ***prescription needs*** including glasses, sunglasses, and contact lenses."[3] To aid its efforts in the digital world, Visionworks controls and operates https://www.visionworks.com/ (the "Website"), which allows users to buy prescription eye products, schedule eye examinations, and browse sensitive health-related articles. *See* Complaint, ECF No. 1, ¶ 1 (hereafter, "¶").

The Complaint alleges that Visionworks forced Plaintiffs' and Class members' web browsers to intercept their communications with the Website, including confidential and highly sensitive protected health information ("PHI"), and sent those communications to third party Meta Platforms, Inc. ("Meta") without Plaintiffs' or Class members' knowledge or consent. Defendant effectuates the surreptitious tracking and sharing through the use of a hidden tracking tool (the "Pixel") embedded on the Website. The information Visionworks intercepts and impermissibly discloses to Meta includes, but is not limited to, booking of doctor's appointments, searches for prescriptions, searches for information related to health conditions, and purchases of glasses and/or contact lenses. ¶¶ 24-27; 195.

Visionworks used the Pixel to boost its marketing efforts and resultant profits by sharing Website users' PHI. It did this despite the protections offered to its customers through state and federal law, industry standards, and in its own privacy policy.

---

[1] Unless otherwise defined, capitalized terms are defined in Plaintiffs' Class Action Complaint (hereafter, "¶").
[2] *About Us*, VISIONWORKS, https://www.visionworks.com/about-us (last visited July 8, 2024).
[3] *Id*.

Users of the Website were not warned that their use of the Website, as a direct result of Visionworks's use of the Pixel, would cause information indicating their health status or receipt of health care to be intercepted by a third party. Visionworks's tracking was done for advertising purposes and relied on criminally or tortiously obtained information. Visionworks did not seek or obtain consent from users to share their information; Visionworks most certainly failed to obtain the requisite explicit consent from users. As a business at the intersection of healthcare and retail, Visionworks knew that it was at risk of violating users' legal protections for health information. Visionworks's Motion to Dismiss ("MTD"), ECF No. 13, therefore, fails and Plaintiffs' causes of action should be sustained.

Visionworks's MTD provides no persuasive reason to dispose of Plaintiffs' serious claims. Instead, it ignores the actual allegations of the Complaint, relies on outdated law, and does not consider the recent decisions of numerous courts that have sustained similar complaints at the motion to dismiss stage.[4] For the reasons set forth below, Visionworks's MTD should be denied.

## II. STATEMENT OF FACTS

Visionworks added the Pixel to its Website, which involved agreeing to Meta's Business Tools Terms. ¶¶ 3, 77-78, 81-87, 89.

Websites operate with a straightforward process: (i) a user tries to visit a webpage at a specific "address" by sending a "HTTP Request" to the server located at that address (¶¶ 48-51); (ii) the server hosting the website then authorizes the user's access, sending an authorization message (the "response") and sending the code associated with the webpage to the user (¶ 51);

[4] *McCulley v. Banner Health,* 2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024); *Mekhail v. N. Mem'l Health Care,* 2024 U.S. Dist. LEXIS 55880 (D. Minn. Mar. 28, 2024); *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *2 (D. Minn. Dec. 21, 2023); *Cousin v. Sharp Healthcare*, 2023 U.S. Dist. LEXIS 206638 (S.D. Cal. Nov. 17, 2023) ("*Cousin II*"); *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ("*Meta Pixel II*"); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813 (N.D. Cal. 2023).

and, the user's browser finally assembles the code into a functional webpage (¶ 51). The Pixel is transferred to a user's browser at the same time—in the same transaction—as when the server sends the website code to the user. *See* ¶¶ 86, 94, 104-105, 122-23. When the user's browser assembles the webpage code (*see* ¶ 54), the Pixel is activated and automatically begins monitoring user activity. *See* ¶ 87. These actions are monitored through different "events," each of which track different types of activity. ¶ 94.

Here, Visionworks programmed the Pixel to capture information related to (i) prescription products on its Website, such as details of the product being sought on its Website, (ii) searches conducted on the Website, (iii) information related to attempts to schedule an eye examination, such as the location and phone number of care providers offering eye exams, and, (vi) by extension, Plaintiffs' status as patients' PHI. ¶¶ 58-62, 99-107. The developers of the Website chose to monitor these specific activities. ¶ 79. When a user triggers a monitored event, such as clicking on an "add to cart" button or submitting search terms into a search engine, the browser instantly generates a new request for the server, starting the "request and authorize process" discussed above. When any of these actions are taken, the Pixel bundles information relevant to the monitored action (*see, e.g.*, ¶¶ 100-07, 110) with a user's c_user cookie, which contains their unencrypted Facebook User ID ("FID") (*see, e.g.,* ¶¶ 108-10), and sends that bundle to Meta (¶ 99). This process of monitoring, duplicating, and disclosing occurs within users' browsers, at the moment communications are being sent to a website's server. *See* ¶ 154 (noting that the Meta's Pixel operates in users' browsers, as opposed to Meta's Conversions API, which operates in a website's server). Visionworks was clearly informed of this through Meta's Business Tools Terms, which it must agree to in order to have the ability to employ the Pixel on its Website.

Visionworks agreed to Meta's Business Tools Terms as a condition of its use of the Pixel. ¶ 154. The Business Tools Terms make clear to website operators – here, Visionworks – that the

Pixel collects user activity information and personal information, matching that information to a user's Facebook profile, and using the resulting profile to target advertising at those users. ¶¶ 76, 135, 153-59. Recognizing that its Pixel could be used to violate privacy rights, Meta explicitly prohibits the use of its tracking tools, including the Pixel, for the purpose of collecting health information, and otherwise requiring that websites using the Pixel have a lawful basis[5] for collecting any information sent to Meta. ¶ 159.

Visionworks did not alert Plaintiffs to its use of the Pixel, or that its use of the Pixel could result in Plaintiffs' PHI being disclosed. *See* ¶ 160. Visionworks's Privacy Policy admits its status as a HIPAA covered entity (¶ 64), and claims that its "HIPAA Privacy Notice . . . addresses . . . a user's rights concerning ***any*** health information that [Defendant] may receive or maintain concerning the user" ¶ 147 (emphasis added). Within its HIPAA Privacy Notice, Defendant disclaims any use of PHI for marketing "without written authorization" from users, with few exceptions that are not applicable here. ¶¶ 150-52.

## III. LEGAL STANDARD

"When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief[,]" and must consider the complaint in its entirety. *Hazlewood v. Netflix, Inc.*, No. 3:23-CV-1109-N, 2023 WL 6771506, at *1 (N.D. Tex. Oct. 11, 2023) (Godbey, J.). "A viable complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. A court generally accepts well-pleaded facts as true and

[5] *Meta Business Tools Terms*, FACEBOOK (Section 1(e)) https://www.facebook.com/legal/businesstech?paipv=0&eav=AfY375fgb725ZjQrZEqZyhoJsO63s7_tFmEPfgnFpe%20w1xw5Wldq7ONw04KTB0G0o-i4&_rdr (last visited July 8, 2024).

construes the complaint in the light most favorable to the plaintiff. *Hazlewood*, 2023 WL 6771506, at *1.

"To establish standing, [in reference to a Rule 12(b)(1) motion] a plaintiff must show: (1) it has suffered . . . a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *Cruz v. Abbott*, 849 F.3d 594, 598 (5th Cir. 2017) (quoting *Hous. Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 617 (5th Cir. 2007)). "To satisfy the injury-in-fact requirement, a plaintiff must allege an injury that is 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

## IV. ARGUMENT

### A. Plaintiffs have adequately pleaded Article III standing.

#### *1. Plaintiffs have adequately pleaded an injury.*

Plaintiffs have alleged an injury in that they "suffered an invasion of a legally protected interest that is concrete and particularized." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 689 (5th Cir. 2021) (quoting *Spokeo v. Robins*, 578 U.S. 330, 330 (2016)).

Courts have historically found that an invasion of privacy or a disclosure of protected information are intangible, concrete injuries that satisfy Article III standing. *See, e.g., Petris v. Sportsman's Warehouse, Inc.*, No. 2:23-cv-1867, 2024 WL 2817530, at *7-8 (W.D. Pa. June 3, 2024) (finding interception of firearm purchase information was sufficiently concrete and particularized to support Article III standing); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (finding plaintiffs' statutory claims involving violation of their substantive right to privacy alleged an injury to a concrete interest); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017) (finding claims involving unlawful disclosure of legally protected information were sufficiently concrete for Article III purposes ). Defendant's contention that Plaintiffs lack Article III standing fails. *See* MTD at 4-7.

Visionworks relies on *TransUnion, LLC v. Ramirez*, 594 U.S. 413 (2021) to argue Plaintiffs' lack standing but *TransUnion* only confirms Plaintiffs were injured here. MTD at 5. In *TransUnion*, individuals were mistaken for terrorists and other serious criminals, and had alerts placed on their credit reports indicating their potential status. 594 U.S. at 414. While some of those people had their credit reports disseminated to third parties, others did not. *Id.* The Court held that the class members whose credit reports had alerts and were disseminated *were harmed*, while those whose reports were not disseminated were not. *Id.* at 414-15. Similar to those who had their credit reports disseminated to third parties, Plaintiffs here allege that their and Class members' PHI was shared with a third party and used for advertising. ¶¶ 8-9, 62, 70-75, 134-137, 157.

Congress concluded PHI was an intangible interest worth protecting when it passed the Health Insurance Portability and Accountability Act (HIPAA) in 1996, which established the creation of a Privacy Rule that protected PHI.[6] Defendant, in its Privacy Policy and HIPAA Privacy Statement, clearly admits to being a HIPAA-covered entity. ¶¶ 59, 64. Plaintiffs' claims involve PHI being intercepted by Meta. MTD at 6. *See, e.g.,* ¶¶ 64-67, 97-113, 200-09.[7]

***2. Plaintiffs have alleged that their harms were caused by Defendant's conduct.***

Defendant argues that Plaintiffs failed to plead a causal connection between their alleged injuries and Defendant's conduct. MTD at 7. However, Defendant's assertion that "the vast

[6] This information includes "demographic information collected from an individual, that is created or received by a covered entity . . . or its employer; and relates to the past, present, or future health, health care, or payment for health care of an individual; and identifies the individual or there is a reasonable basis to believe the information can be used to identify the individual." *See Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES (Mar. 18, 2024) https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html#ftn20 (last visited July 8, 2024)

[7] Defendant tries to sidestep the connection between Plaintiffs' harm and Congress' intent by relying on a case in which the plaintiffs did not allege that *any* personal information was shared. *See* MTD at 6 citing *Valenzuela v. Keurig Green Mountain, Inc.*, No. 3:22-cv-09042-JSC, 2023 WL 6609351, at *3-4 (N.D. Cal. Oct. 10, 2023) (finding no injury where plaintiffs failed to allege "*any* information about the contents of her chat" or articulate "any privacy interest") (emphasis in original).

majority of Plaintiffs' allegations are directed toward the conduct of Meta and its Pixel technology" is wrong. *See id.* Plaintiffs specifically alleged that Defendant: (i) purposefully added the Pixel to the Website and took the affirmative steps necessary to do so (¶¶ 76-89); (ii) used descriptive URLs, parameters, and metadata on the Website, containing users' health information (¶¶ 94-96, 98-100, 105); and (iii) disregarded legal requirements to notify or obtain consent from Website users regarding Defendant's use of the Pixel on the Website to capture and share PHI (¶¶147-52, 153-60). Absent from the MTD is any claim the Pixel does *not* cause the transmission of the sensitive information described by Plaintiffs. *See* MTD at 7. Thus, Plaintiffs have alleged causation.

***3. Plaintiffs' injuries are redressable.***

As Plaintiffs have established injury in Section IV(A)(1), Defendant's argument that Plaintiffs failed to plead facts demonstrating that any injury could be redressed is moot. "Redressability is not a demand for mathematical certainty. It is sufficient for the plaintiff to establish a 'substantial likelihood that the requested relief will remedy the alleged injury in fact.'" *Stevens*, 529 U.S. at 771. As Defendant notes, finding "injury-in-fact is often determinative" of standing. *Bradix v. Advance Stores Co.*, No. 16-4902, 2016 WL 3617717, at *3 (E.D. La. July 6, 2016). In *Bradix*, the court found no allegations of "impending injury" aside from unidentified credit inquiries that did not adversely impact Plaintiff's credit score. *Id.* Unlike *Bradix*, this is not a data breach case where injury is speculative. Rather, Plaintiffs' private communications have already been illegally intercepted and shared with a third party, and thus, Plaintiffs are entitled to monetary damages, including statutory damages under the Federal, Pennsylvania, and Texas wiretap claims, as well as injunctive relief, addressed below.

#### *4. Plaintiffs have standing for injunctive relief.*

Defendant maintains that Plaintiffs lack standing for injunctive relief. *See* MTD at 7-8. However, Visionworks relies on cases in which the plaintiffs did not have an ongoing relationship with defendants, and were not likely to have a future relationship with defendants. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-106, 112-113 (1983) (plaintiff subjected to excessive, illegal use of force by city police could not sue for injunctive relief without demonstrating a potential recurrence); *Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 342-43 (5th Cir. 2012) (denying injunction where there was no real and immediate threat that any of the remaining plaintiffs will purchase another overpriced casket). Here, the nature of Defendant's Website calls for and encourages recurring business and repeat customers. In fact, the Visionworks Website uses retargeting tools to do precisely that. Specifically, it acknowledges the use of cookies to provide information that is "targeted to [users'] interests."[8] In other words, Plaintiffs are not only likely to revisit the Website, Defendant takes active steps to encourage them to do so.[9]

### B. Defendant disclosed Plaintiffs' PHI.

Defendant's first argument in support of its Motion to Dismiss is that Plaintiffs' allegations do not demonstrate any disclosure of PHI. MTD at 9-11. HIPAA's "Privacy Rule" protects PHI, which includes "individually identifiable health information" covering "demographic information collected from an individual" that is "created or received by a health care provider . . ." and "relates

---

[8] *Privacy Policy - How Information Is Collected*, VISIONWORKS, https://www.visionworks.com/privacy-policy (last visited July 8, 2024).

[9] As noted in the Complaint (*see* ¶ 24 n.5), if given the opportunity to amend their Complaint, Plaintiffs can provide additional, sensitive details about their doctor visits, and any services or products searched for or obtained. Plaintiffs could also add allegations that they would continue to use the Website if their sensitive information is no longer shared with third parties. For example, Plaintiff Sharma could add allegations stating that he visited Defendant's Website in late March 2022 and he booked an eye exam appointment with a doctor. Plaintiff Sharma then attended the eye exam approximately two weeks later, on April 12, 2022. Upon completion of the eye exam, Plaintiff Sharma returned to Defendant's Website to browse the Website's collection of prescription products. Plaintiff Sharma could also add allegations stating that he would continue to use the Website if his sensitive information is no longer shared with third parties.

to the past, present, or future physical . . . health or condition of an individual" or the "provision of health care to an individual" or the "past, present, or future payment for the provision of health care to an individual" that "identifies the individual" or "there is a reasonable basis to believe the information can be used to identify the individual." 45 C.F.R. § 160.103.

Since December 1, 2022, the Department of Health and Human Services ("HHS") has alerted health care providers that the Privacy Rule applies to "online tracking technologies . . . like . . . [the] Meta Pixel . . . ." ¶¶ 41-42. The Privacy Rule applies to "authenticated webpages" which require a user to log in, as well as to "unauthenticated webpages, which are webpages that do not require users to login . . . ." ¶ 44.

Plaintiffs allege that Visionworks utilized Meta's tracking tools and services to intercept their communications, including details concerning scheduling of eye exams, and searches for health-related products and information using the Website's "Search Bar.". *See* ¶¶ 2, 4-5, 23, 24, 60-62, 99-103, 195. This information was combined with Plaintiffs' FIDs (which can be used to identify a user) before it was sent to Meta. *See* ¶¶ 109-13.

Visionworks asks the Court to disregard the HHS bulletin, because the guidance does not "have the force of law." MTD at 11 (citing *Kurowski v. Rush Sys. for Health ("Rush II")*, 683 F. Supp. 3d 836, 843 (N.D. Ill. July 24, 2023)) (refusing to apply HHS guidance retrospectively or give it deference). However, HHS has modified the Privacy Rule after releasing proposals for public comment[10] and, for over a decade, has had final rules in place that speak to and prohibit Visionworks's conduct. *See Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules Under the Health Information Technology for Economic and Clinical Health Act and the Genetic Information Nondiscrimination Act*, 78 F.R. 5642, 5642 (Jan. 25, 2013)

[10] *See Health Information Privacy: The HIPAA Privacy Rule*, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, https://www.hhs.gov/hipaa/for-professionals/privacy/index.html (last visited July 8, 2024).

(to be codified at 45 C.F.R. pts. 160 and 164) ("entities should determine whether there is a likelihood that the protected health information released could be re-identified based on the context and the ability to link the information with other available information"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022) (noting, under the HHS' 2013 rule changes, a HIPAA violation could occur where a covered entity disclosed "a list of patient names, addresses, and hospital identification numbers"). Thus, the HHS guidance should be considered by a court interpreting HIPAA and its Privacy Rule.[11] At a minimum, the HHS guidance provided Visionworks with notice that its use of the Meta Pixel may cause PHI to be disclosed.

**C. Plaintiffs' Intrusion Upon Seclusion Claims Were Adequately Pled.**

The elements of intrusion upon seclusion are: (1) an intentional intrusion upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person. *Amin v. UPS*, 66 F.4th 568, 576 (5th Cir. 2023). An action for intrusion is typically found when there has been an "eavesdropping with the aid of a wiretap, microphone, or spying . . . ." *Hovanec v. Miller*, No. SA-17-CV-766-XR, 2018 WL 1221486, at *9 (W.D. Tex. Mar. 7, 2018) (quoting *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)). This includes "attempt[s] to discover or perceive private information." *UPS*, 66 F.4th at 577.

Visionworks claims that Plaintiffs' intrusion upon seclusion allegations fails because: (i) Plaintiffs cannot have reasonable expectation of privacy for information voluntarily submitted to the Website; (ii) there was no disclosure of private medical facts; and (iii) any interception of information would not be "highly offensive." *See* MTD at 19.

First, a reasonable expectation of privacy typically exists where a plaintiff is transmitting health-related information to a medical care provider. *See Doe v. High-Tech Institute, Inc.*, 972

[11] The court in *American Hospital Association v. Becerra*, No. 4:23-cv-01110-P, 2024 WL 3075865, at *9 (N.D. Tex. June 20, 2024) agrees the guidance was final agency action and carried legal ramifications (*see Id.* at *16).

P.2d 1060, 1068 (Colo. App. 1998) ("[T]here is a . . . recognized privacy interest in . . . one's health"); *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 981 (7th Cir. 2023) (noting the private nature of medical details); *In re Meta Pixel*, 647 F. Supp. 3d at 800 (finding similar medically-related information supported a reasonable expectation of privacy); *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. May 6, 2023) ("Personal medical information is understood to be among the most sensitive information. . . .").

Even if voluntarily submitting communications was a determinative factor (it is not), Visionworks can only claim that the disclosure of health information was voluntary. However, PHI is the combination of health information with identifiable information. Plaintiffs alleged that users' identifiable information, via FIDs, were not voluntarily provided to Visionworks by Plaintiffs, but rather collected by the Pixel on their browsers and sent directly to Meta. *See* ¶¶ 110, 113, 122. Visionworks does not, and cannot, claim that it was provided access to Plaintiffs' FIDs voluntarily by Plaintiffs before the FIDs were intercepted and possessed by Meta.

Second, enabling third parties to intercept PHI is a highly offensive intrusion. To be "highly offensive," an intrusion "must be unreasonable, unjustified or unwarranted." *Noviello v. Holloway Funding Group*, No. 3:22-cv-52-BN, 2023 WL 128395, at *7 (N.D. Tex. Jan. 9, 2023).

This case is distinguishable from *Sweat v. Houston Methodist Hospital*, No. H-24-775, 2024 WL 3070184, at *1 (S.D. Tex. June 20, 2024), a recent decision involving similar allegations. There, the plaintiffs alleged that the Facebook Pixel was active on public and private elements of a hospital's website. Plaintiffs alleged that after collecting the information using the Pixel, the hospital provided the information to Facebook. *Id.* While the court in *Houston Methodist* agreed "with the plaintiffs that an intrusion need not be physical[,]" it nonetheless found that a "gathering information and disclosing it to a third party, even medical information, does not qualify as an actual intrusion." *Id.* at *3.

However, Plaintiffs' allegations here are materially different from those in *Houston Methodist.* Plaintiffs here do not allege that Visionworks merely gathers Plaintiffs' information itself via the Pixel and then discloses that information to a third party. Instead, Plaintiffs allege that that Visionworks places the Pixel on users' browsers, which sends information directly from users to third parties. *See* ¶¶ 46-54, 102, 155 (noting that the Pixel is programmed into the Website, but operates on users' browsers, and sends information from users' browsers to Meta). This differentiates Plaintiffs' claims from cases where the harm alleged "was not about the intrusion itself but the publication of the information[.]" *Houston Methodist*, 2024 WL 3070184 at *3 (citing *Hartley v. Univ. of Chicago Med. Ctr.*, No. 22 C 5891, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023)).

As Plaintiffs have established that the information at issue here involves PHI (*see, infra,* Section IV(D)(2) third parties intercepting that PHI for marketing purposes via the Pixel is highly offensive.[12]

**D. Plaintiffs Have Adequately Pled Claims Under the Federal Wiretap Act and the State Wiretap Acts.**

A violation of the Electronic Communications Privacy Act occurs when a defendant has "(1) intentionally; (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept; (3) the contents of; (4) an electronic communication; (5) using a device." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016). Plaintiffs allege their communications to Visionworks were "intercepted" by joint action between Visionworks and Meta, in that: (i) Visionworks added the Pixel to its Website; and (ii) Meta designed the Pixel, which intercepted Plaintiffs' information, and Meta received and processed the information to

[12] As discussed more fully in Section IV(A)(1), Plaintiffs have alleged an injury, especially here, where "[t]he intrusion itself makes the defendant subject to liability, even [if] there is no publication or other use of any kind of the . . . information . . . ." *United Parcel Service,* 66 F.4th at 577 (quoting Restatement (Second) of Torts § 652B cmt. b (1977)). That Plaintiffs *have* alleged use of the information merely reinforces that an injury occurred. *See* ¶ 62.

improve advertising efforts by both Visionworks and Meta. *See* ¶¶ 8-9, 73-75, 77-78. Defendant argues that Plaintiffs' wiretap claims fail because (1) the information shared is not PHI, thus Defendant qualifies for the party exception under the Federal and Texas Wiretap Acts; (2) Plaintiffs did not have a reasonable expectation of privacy under WESCA; and (3) Plaintiffs state law claims are preempted. *See* MTD at 9-13, 15-19-18. These arguments all fail for the reasons set forth below.

***1. The party exception does not apply to Visionworks for the Federal and Texas Wiretap Acts.***

The Texas and Federal Wiretap Acts contain exemptions from liability for a person who is a "party" to the communication. *See Smith v. Google LLC*, No. 23-cv-03527-PCP, 2024 WL 2808270, at *7, 9 (N.D. Cal. June 3, 2024). Visionworks argues that the party exception applies for two reasons: (i) Visionworks was a party to the recording; and (ii) Visionworks's tortious or criminal acts were not independent of the act of recording. *See* MTD at 16-17.

First, Visionworks claims it cannot be liable for a violation under the Federal Wiretap Act and the Texas Wiretap Act because it was a party to the communications. *See* MTD at 16. However, establishing Visionworks's status as a party to a conversation is only sufficient as a defense where Visionworks itself recorded or intercepted Plaintiffs' communications. Where a third party intercepts the communications, Visionworks must establish that it consented to the third-party's interceptions. *See Oliver v. Rowan*, No. 05-19-01433-CV, 2021 WL 2948554, at *8 (Tex. App. – Dallas June 29, 2021).

Plaintiffs here allege that Visionworks used the Pixel to intercept Plaintiffs' communications from *Plaintiffs*' internet browser. *See* ¶ 155. While Meta undertook the actual interception (*see* MTD at 7 "Plaintiffs allege that *Meta* intercepted communications . . . ."), Defendant added the Pixel to its Website and Defendant benefitted from the intercepted information (*see, e.g.,* ¶¶201, 217, 225).

Importantly, Meta did not offer Defendant carte blanche data interception services. Instead, Meta's Business Tools Terms put conditions on Defendant's use of the Pixel, including prohibiting the use of the Pixel to intercept sensitive or legally protected health-related information. ¶¶ 159-160. Defendant's consent to Meta's interceptions did not encompass the use of the Pixel to capture Plaintiffs' PHI.

***2. The crime-tort exception applies to enforce Visionworks's liability.***

Even if Visionworks did consent to Meta's interceptions, the crime-tort exception applies to enforce Visionworks's liability under the Texas and Federal Wiretap Acts. The "party exception" cannot apply where – as alleged here (¶¶ 37, 202) – the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d); *see* Tex. Penal Code § 16.02(c)(4)(B).

The crime-tort exception focuses on whether "the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (quotation marks and citation omitted). Plaintiffs allege that Visionworks procured Meta to intercept their communications, resulting in criminal violations of HIPAA and an intrusion into Plaintiffs' seclusion. *See* ¶¶ 4, 19, 81-89, 201, 203, 218, 244-251. Visionworks acted with intent to share Plaintiffs' PHI with third parties for advertising purposes, in violation of HIPAA, and Visionworks installed the Pixel onto its Website so that Meta could intercept Plaintiffs' communications. ¶¶ 2-5, 17-19, 24, 25-27, 60-61, 73-74, 109-10, 134 (alleging Visionworks disclosed PHI to Meta alongside FIDs). Plaintiffs' allegations suffice to apply the crime-tort exception here. *See Houston Methodist*, 2024 WL 3070184, at *4 (finding use of Pixel to disclose health data to Meta invoked crime-tort exception).

Defendant's authority does little to question the application of the crime-tort exception here. *See* MTD at 17. For example, in *Rush II*, 683 F. Supp. 3d at 843 , plaintiffs made vague

allegations about defendant's disclosure of PHI. The vague allegations did not support a finding that HIPAA was violated by defendant's use of internet tracking tools, and other potentially criminal or tortious purposes were disregarded because a plaintiff must allege that defendant committed a tortious or criminal act independent from the act of recording. *Id.* at 844. In fact, in *Kurowski v. Rush System for Health* ("*Rush III*"), No. 22 C 5380, 2023 WL 8544084, at *2-3 (N.D. Ill. Dec. 11, 2023), plaintiffs' proposed amended complaint adequately alleged PHI was at issue and that the crime-tort exception resulted from a HIPAA violation. In short, the court in *Rush II* was not concerned with the legal theory but rather insufficient pleadings.

Defendant's reliance on *B.K. v. Eisenhower Medical Center* ("*Eisenhower I*") is similarly misplaced. *See* MTD at 17. In *Eisenhower I*, Judge Bernal dismissed plaintiffs' claims because plaintiffs had not alleged an independent criminal or tortious purpose regarding allegations of disclosing PHI via internet tracking tools. No. 23-cv-2092, 2024 WL 878100, at *5 (C.D. Cal. Apr. 11, 2024) (Bernal, J.). However, on a motion for reconsideration, Judge Bernal found *Rush III* instructive, which found that a well-pled HIPAA violation constituted an independently illegal or actionable conduct such that the crime-tort exception applied. The court allowed plaintiffs to amend their claims regarding the crime-tort exception. *See B.K. v. Eisenhower Medical Center* ("*Eisenhower II*"), No. 23-cv-2092, 2024 WL 2037404, at *4 (C.D. Cal. Apr. 11, 2024).[13] One month after *Eisenhower II*, Judge Bernal's decision in *R.C. v. Walgreen Co.*, No. 23-cv-1933, 2024 WL 2263395, at *15 (C.D. Cal. May 9, 2024) confirmed that invasion of privacy claims also supported the application of the crime-tort exception to internet tracking tools being used to disclose health related information on unauthenticated webpages.

[13] Even if this Court finds that disclosure of HIPAA protected information is not independent of the wiretap violation, Plaintiffs can amend to allege that use of PHI for marketing purposes violates HIPAA without authorization from users. *See* 45 C.F.R. 164.508(a)(3).

Multiple federal courts have found substantially identical allegations sufficient to trigger the crime-tort exception. *See McCulley v. Banner Health*, No. 2:23-cv-00985-SPL (D. Ariz.), Dkt. 43 ("the crime-tort exemption to the party-exception applies given that [plaintiffs] plausibly alleged that [d]efendant intentionally violated state law"); *In re Grp. Health Plan Litig.*, No. 23-cv-267, 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) (finding violation of HIPAA sufficient to support crime-tort exception); *Kane v. Univ. of Rochester*, No. 23-CV-6027, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, No. 23-CV-00440, 2024 WL 1332260, at *5 (D. Minn. Mar. 28, 2024) (same); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797 ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising . . . ."); *B.K. v. Desert Care Network*, No. 2:23-cv-05021, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (crime-tort exception applicable where defendant allegedly intercepted communications regarding "requests to refill prescriptions and appointment scheduling inquires").

Despite this growing trend among federal courts, Visionworks argues the crime-tort exception does not apply here because the purpose of the Pixel is advertising and marketing. MTD at 17. Regardless of how it is characterized, Visionworks's use of the Pixel allows Meta to intercept and redirect Plaintiffs' communications containing Plaintiffs' search queries, eye exam scheduling information, and medical product information, which it assisted in by adding the Pixel to its Website. ¶¶ 9-10, 16, 19, 62, 72-77, 110, 114-15, 118, 138, 155-61, 184-212. Visionworks implies that advertising and marketing are de facto non-criminal and non-tortious activities. MTD at 17. But the "existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose." *In re Meta Pixel*, 647 F. Supp. 3d at 797; *see also Walgreen Co.*, 2024 WL 2263395 at *15 ("even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply . . . ."). That Visionworks stood to financially profit from its

actions does not excuse its conduct "at the pleading stage." *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *8.

### *3. Plaintiffs' Pennsylvania WESCA Claim Was Adequately Pled.*

A WESCA claim is established where Plaintiffs show that defendant "intercepted an electronic communication." *Oliver v. Noom, Inc.*, No. 2:22-cv-1857, 2023 WL 8600576, at *6 (W.D. Pa. Aug. 22, 2023) (citing 18 Pa. C.S. §5703(1)). Defendant admits that Plaintiffs have alleged an interception occurred (*see* MTD at 1),[14] but argues that Plaintiffs' claim nonetheless fails for not alleging "any justifiable expectation that their communications would not be intercepted." *See* MTD at 18.

Visionworks misreads WESCA and caselaw interpreting it. Visionworks relies on *Agnew v. Dupler*, 553 Pa. 33, 38 (Pa. 1998) to argue that Plaintiffs must allege a justifiable expectation of privacy as a part of their WESCA claim. However, *Agnew* only required a justifiable expectation that an *oral communication* would not be intercepted. 553 Pa. at 38; *see Peruto v. Roc Nation*, 385 F. Supp. 3d 384, 387 (E.D. Pa. June 12, 2019) ("the Pennsylvania Supreme Court has added a judicial gloss to the statute . . . by reading 'oral communications' to include only communications where 'the speaker possessed a reasonable expectation of privacy in the conversation'") (quoting *Agnew*, 38 Pa. at 39). In contrast, the definition of "electronic communication" does not require expectation of privacy, *see* 18 Pa. C.S.A. § 5702, and, even if an expectation of privacy was required (it is not), Plaintiffs have alleged such an expectation. *See* § IV(C).

### **E. Plaintiffs' State Law Claims Are Not Preempted.**

Defendant argues that Plaintiffs' state law claims are preempted if HIPAA applies, because Plaintiffs' state law claims "are contrary to HIPAA's requirements for the safeguarding of PHI." MTD at 12.

---

[14] "The crux of the Complaint alleges that Meta . . . intercepted Plaintiffs' communications through Defendant's . . . website".

Rather than arising *from* a HIPAA violation, Plaintiffs merely established that they had an objectively reasonable expectation of privacy in their communications with Defendant because that information was protected by law (*see supra*, §IV(C)) and that Defendant was not entitled to an affirmative defense for wiretap claims as a party to the conversation (*see supra* § IV(D)). *See Marshall v. Georgia CVS Pharmacy, L.L.C.,* 580 F. Supp. 3d 1301, 1312 (N.D. Ga. Jan. 7, 2022) (noting plaintiff's mention of HIPAA as an objective standard to determine whether privacy existed did not equate to her claims "*necessarily* turn[ing] on some construction of federal law") (quoting *Madzimoyo v. Bank of N.Y. Mellon Tr. Co., N.A.*, 440 F. App'x, 730 (11th Cir. 2011)) (internal quotations omitted) (emphasis added)).

Even if the Court agrees with Defendant that Plaintiffs' claims arise out of HIPAA violations, this does not end the inquiry. The lack of private right of action does not equate to a bar on private action. *See Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 582 (N.D. Ill. Sep. 4, 2020) ("the fact that there is no right of action under a federal statute does not preempt or otherwise bar a viable state law claim"). In *Dinerstein*, the court was faced with similar HIPAA-preemption defenses involving disclosure of electronic medical records and found that the HIPAA-preemption clause "addresses only conflict preemption." *Id.* at 583. Conflict preemption exists only where (1) "it is impossible for a private party to comply with both state and federal requirements," or (2) "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 577-78 (7th Cir. 2012)). The *Dinerstein* court explained that HIPAA specifically notes that more stringent "state rules are not preempted, 45 C.F.R. §160.203(b), and 'more stringent' is defined to include a state law that 'provides greater privacy protection for the individual who is the subject of the individually identifiable information,' §160.202." *Id.* at 583-84.

Contrary to Defendant's assertions, Plaintiffs' claims here are more stringent than HIPAA. The wiretap claims require showing the interception or use of the contents of communications with consent from both parties, where Plaintiffs can allege any criminal or tortious intent, not just HIPAA violations.[15] The wiretap claims also protect a broader category of communications than just PHI. The private communications here are protected by HIPAA which is not a requirement of the state law claims. For example, courts have found intrusions into or interceptions of communications containing contents less sensitive than health information to be highly offensive. *See India Price v. Carnival Corporation*, No. 23-cv-236, 2024 WL 221437, at *8 (S.D. Cal. Jan. 19, 2024) (concluding that compiling browsing information from cruise line was highly offensive); *Schnur v. JetBlue Airways Corporation*, No. 2:22-cv-1621, 2024 WL 2816552, at *10 (W.D. Pa. June 3, 2024) (concluding plaintiffs sufficiently alleged wiretap claim involving the tracking of travel information). Because less offensive activity would be covered by the state law claims asserted here, Plaintiffs' claims offer more stringent protections than HIPAA and are not preempted.

### F. Plaintiffs Adequately Allege A Breach of Implied Contract.[16]

Under Texas law, the elements of an implied or express contract are identical, except "in the character and manner of proof required to establish them." *Electrostim Med. Servs. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015). Implied contracts "arise[] from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract." *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972).

---

[15] The crime-tort exception does not only apply to HIPAA violations, but rather to any tort, including intrusion upon seclusion or violation of any criminal statute.

[16] Plaintiffs do not address Visionworks's arguments as to whether the Complaint identified "any section or any specific term that was allegedly violated," *see* MTD at 20, as they concede for the purposes of the motions pending before the Court as to named Plaintiffs, that an actual contract (as opposed to implied contract) does not exist.

In the absence of an express agreement, courts recognize that the act of receiving private information creates an implied promise not to disclose that information. *See, e.g., Kirsten v. California Pizza Kitchen, Inc.,* No. 2:21-CV-09578, 2022 WL 16894503, at *5 (C.D. Cal. July 29, 2022) (explaining "receipt of PII implies the recipient's assent to protect the PII sufficiently"). This is precisely what happened here. Plaintiffs' claims involve implied promises that relate to the Defendant's receipt of PHI or medical information and assurances made in Defendant's Privacy Policy and Notice of Privacy Practices ("NPP"). ¶¶ 144-45, 147-153, 235-242.[17] The unauthorized disclosure of data violates the implied agreement with Website users and caused Plaintiffs' and Class members' harm. ¶¶ 10, 241.

## V. <u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's Motion to Dismiss should be denied. Should the Court conclude that Plaintiffs have not sufficiently pled facts to support any of their claims, Plaintiffs respectfully request permission to amend the complaint to address those at issue.

---

[17] For example, Defendant's NPP recognizes that Visionworks is "required by applicable federal and state law to maintain the privacy of [user's] protected health information", noting that Visionworks "cannot use or disclose" users' PHI for any reason except those described in the NPP. ¶ 152. Despite those promises, Defendant disclosed Plaintiffs' PHI to Meta without Plaintiffs' consent. ¶¶ 3-9, 16-18, 24-27, 144-161.

Dated: July 8, 2024

**FOSTER YARBOROUGH PLLC**

By: *_/s/ Patrick Yarborough_*
Patrick Yarborough
Jeffrey Lucas Ott
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202
Email: patrick@fosteryarborough.com
Email: luke@fosteryarborough.com

**LEVI & KORSINSKY, LLP**

Mark S. Reich*
Courtney Maccarone*
Gary I. Ishimoto**
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk.com
Email: gishimoto@zlk.com

*Counsel for Plaintiff*

**pro hac vice* forthcoming
***admitted pro hac vice on June 20, 2024*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 8, 2024.

By: *_/s/ Patrick Yarborough_*
Patrick Yarborough