**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SAURAV SHARMA, DIANE YOUNG, JAIME STIEVE, and GEORGE DEAN, On Behalf of Themselves and All Others Similarly Situated, | § § § § | |
| | § | CASE NO. 5:24-cv-00206-FB |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| VISIONWORKS OF AMERICA, INC., | § | |
| | § | |
| Defendant. | § | |

**<u>DEFENDANT VISIONWORKS OF AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL MEDIATION AND ARBITRATION</u>**

# TABLE OF CONTENTS

**I. INTRODUCTION .......... 1**

**II. ARGUMENT .......... 2**

- **A. Defendant Met Its Burden of Proving the Existence of an Agreement to Mediate .......... 2**
- **B. Plaintiffs Have Not Met Their Burden of Showing That the Agreements are Unenforceable .......... 4**
- **C. The Agreements Provided Sufficient Notice to Be Enforceable .......... 6**
- **D. The Claims of Absent Class Members Subject to Mandatory Arbitration Should be Stricken .......... 8**

**III. CONCLUSION .......... 9**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................7,8

*Carter v. Countrywide Credit Indus., Inc.*,
362 F.3d 294, 297 (5th Cir. 2004) ....................2

*DHI Grp. Inc. v. Kent*,
No. H-16-1670, 2017 U.S. Dist. LEXIS 178481 (S.D. Tex. April 21, 2017)....................3

*El Paso Prod. Gom, Inc. v. Smith*,
No. 04-2121, 2008 U.S. Dist. LEXIS 132331 (E.D. La. Mar. 5, 2008) ....................2

*Forby v. One Techs., LP*,
No. 3:16-CV-856-L, 2020 U.S. Dist. LEXIS 128913 (N.D. Tex. July 22, 2020) ....................9

*Grant v. Houser*,
469 F. App'x. 310, 315 (5th Cir. 2012) ....................2

*Holubets v. Forest River, Inc.*,
No. 1:21-CV-01004-DAE, 2023 U.S. Dist. LEXIS 135233 (W.D. Tex. July 5, 2023) ....................3

*In re Capco Energy, Inc.*,
669 F.3d 274 (5th Cir. 2012) ....................2, 4

*Kay v. Wells Fargo & Co. N.A.*,
No. C 07-01351 WHA, 2007 U.S. Dist. LEXIS 55519 (N.D. Cal. 2007) ....................9

*Kennedy v. Equifax Info. Servs. LLC*,
No. SA-23-CV-00470-FB, 2023 U.S. Dist. LEXIS 222967 (W.D. Tex. Dec. 13, 2023)....................4

*Pershing LLC v. Bevis*,
No. 13-672-JJB-RLB, 2014 U.S. Dist. LEXIS 62847 (M.D. La. May 6, 2014) ....................3

*Phillips v. Neutron Holdings, Inc.*,
No. 3:18-CV-3382-S, 2019 U.S. Dist. LEXIS 171313 (N.D. Tex. Oct. 2, 2019) ....................6,7

*Plazza v. Airbnb, Inc.*,
289 F. Supp. 3d 537 (S.D.N.Y. 2018)....................6

*Pollstar v. Gigmania, Ltd.*,
170 F. Supp.2d 974 (E.D. Cal. 2000)....................3

*Sarchi v. Uber Techs., Inc.*,
2002 ME 8, ¶ 23, 268 A.3d 258, 267 (Me. 2022)....................7

*Selden v. Airbnb, Inc.*,
4 F.4th 148 (D.C. Cir. 2021)....................................................................................8

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
No. 3:06-CV-0891-B, 2007 U.S. Dist. LEXIS 96230, at *14 (N.D. Tex. Sep. 12, 2007) ..............................................................................................................3

*U.S. Money Res., Inc. v. Kagan*,
No. A-18-CV-577-LY, 2019 U.S. Dist. LEXIS 59438 (W.D. Tex. Jan. 29, 2019)..................7

*Walker v. Neutron Holdings, Inc.*,
No. 1:19-CV-574-RP, 2020 U.S. Dist. LEXIS 24845 (W.D. Tex. Feb. 11, 2020) ..................2

*Williams v. Bank of Am., N.A.*,
602 F. App’x 187 (5th Cir. 2015) ...........................................................................2

**RULES**

Fed. R. Civ. P. 23(d)(1)(D)...........................................................................................9

**OTHER AUTHORITIES**

*Google Ads Help*, GOOGLE (lasted visited August 1, 2024),
https://support.google.com/google-ads/answer/6322?hl=en...............................................5

*How Google Marketing Platform advertising products and Google Ad Manager use cookies*, GOOGLE (lasted visited August 1, 2024),
https://support.google.com/ displayvideo/answer/2839090?hl=en........................................5,6

## I. INTRODUCTION

Tellingly, Plaintiffs' Response in Opposition to Defendant's Motion to Compel Arbitration and Mediation (Dkt. No. 23, the "Response") fails to address several key arguments demonstrating that (1) Plaintiffs should be compelled to mediate and (2) claims on behalf of absent putative class members who used the Website[1] on or after February 22, 2024 should be stricken as those individuals are subject to a binding arbitration and class action waiver provision. First, Plaintiffs simply ignore that they admitted in their Complaint to entering into an agreement via the Website Terms – allegations they made in support of their breach of contract claim. The Website Terms incorporate the Website Privacy Policy, which requires Plaintiffs to mediate. Together, the Website Terms and Website Privacy Policy are referred to as the "Agreements." Plaintiffs cannot seek to enforce the Agreements while at the same time disclaiming the dispute resolution requirement. Second, Plaintiffs did not respond to the facts set out in the Motion demonstrating that Plaintiffs Sharma and Stieve created accounts on the Website and therefore affirmatively checked a box consenting to the Agreements. Third, Plaintiffs did not dispute that their claims are within the scope of the mediation or arbitration provisions. Instead, Plaintiffs argue that the Agreements are unenforceable browsewrap. But, for the reasons set forth in the Motion and herein, the Agreements were reasonably conspicuous such that Plaintiffs are bound by them.

---

[1] All defined terms have the same meaning as set forth in the Motion to Compel Mediation and Arbitration (Dkt. No. 14, the "Motion") unless otherwise specified.

## II. ARGUMENT

### A. Defendant Met Its Burden of Proving the Existence of an Agreement to Mediate.

Plaintiffs' arguments that the Agreements are unenforceable ignore the applicable burdens. (Response at 6-9). Defendant, as the party seeking to compel arbitration or mediation, need only prove the existence of an agreement by a preponderance of the evidence. *Walker v. Neutron Holdings, Inc.*, No. 1:19-CV-574-RP, 2020 U.S. Dist. LEXIS 24845, at *6 (W.D. Tex. Feb. 11, 2020) (citing *Grant v. Houser*, 469 F. App'x. 310, 315 (5th Cir. 2012)). Plaintiffs then carry the burden of proving invalidity or that the claims are outside of the Agreements' scope.[2] *Walker*, 2020 U.S. Dist LEXIS 24845, at *6 (citing *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)).

Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012). Defendant has met its burden by satisfying each of these elements for the Agreements.

First, an offer is made when one party proposes terms to another party, who then has the opportunity to accept those terms. *El Paso Prod. Gom, Inc. v. Smith*, No. 04-2121, 2008 U.S. Dist. LEXIS 132331, at *31 (E.D. La. Mar. 5, 2008). Here, the offer was presented by Defendant when the terms of the Agreements were made available to Plaintiffs on the Website. Second, acceptance must be in strict compliance with the terms of the offer, meaning that the accepting party must

---

[2] Plaintiffs made no argument that their claims fall outside the scope of the Agreements' mediation or arbitration provisions.

agree to the exact terms proposed without modifications. *Williams v. Bank of Am., N.A.*, 602 F. App'x 187, 188 (5th Cir. 2015). Here, Plaintiffs gave their "assent simply by using the web site." *DHI Grp. Inc. v. Kent*, No. H-16-1670, 2017 U.S. Dist. LEXIS 178481, at *11 (S.D. Tex. April 21, 2017) (citing *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3: 06-CV-0891-B, 2007 U.S. Dist. LEXIS 96230, at *14 (N.D. Tex. Sep. 12, 2007)); *see also Pollstar v. Gigmania, Ltd.*, 170 F. Supp.2d 974, 981 (E.D. Cal. 2000) ("[A] browse wrap license is part of the web site and the user assents to the contract when the user visits the web site."). Plaintiffs admit to using the Website as their use is the crux of the Complaint and they do not allege that they proposed modifications to the Agreements.

Third, mutual assent occurs when both parties have a mutual understanding and agreement on the essential terms and conditions of the contract. *Holubets v. Forest River, Inc.*, No. 1:21-CV-01004-DAE, 2023 U.S. Dist. LEXIS 135233, at *11-12 (W.D. Tex. July 5, 2023). Defendants have shown mutual assent in several ways. Plaintiffs expressly admit that they relied on the Agreements when using the Website. The Complaint alleges: Plaintiffs have "entered into an express contract . . . in the form of Visionworks Terms of Use on the Website" (Compl., ¶ 245) and "would not have used the Website in the absence of an express contract" (Complt., ¶ 248). As such, Plaintiffs are equitably estopped from arguing that they are not bound by the mediation requirement. Plaintiffs cannot use the Agreements as both a sword to assert their breach of contract claim[3] and a shield against enforcing mandatory mediation. *See Pershing LLC v. Bevis*, No. 13-672-JJB-RLB,

[3] Plaintiffs asserted claims for breach of contract and breach of implied contract. In their response to Defendant's Motion to Dismiss, Plaintiffs appear to abandon their breach of contract claim in a thinly veiled attempt to avoid the repercussions of their own pleadings. (Dkt. No. 22, fn. 16). Plaintiffs should not be allowed to hide from their own factual allegations, where they alleged both notice and reliance upon the Agreements when accessing the Website.

2014 U.S. Dist. LEXIS 62847, at *12-13 (M.D. La. May 6, 2014) ("The application of equitable estoppel works to prevent the inequitable result that would occur if a party was able to use a contract as both a sword and shield. Simply put, equitable estoppel prevents a party from reaping the benefits of an agreement and then attempting to avoid the burdens that it may impose."). As stated above, Plaintiffs also consented to the Agreements by interacting with the Website. Mutual assent was further demonstrated for Plaintiffs Sharma and Stieve when they affirmatively checked a box agreeing to the Agreements, as required to create their accounts on the Website. (Motion at 13; Ex. A, ¶¶ 15-17).

The fourth and fifth elements – that each party's consent to the terms must be evidenced and the parties must intend that the contract will create binding obligations – have been demonstrated for the same reasons. *In re Capco Energy, Inc.*, 669 F.3d at 280.

**B. Plaintiffs Have Not Met Their Burden of Showing That the Agreements are Unenforceable.**

Since Defendant met its initial burden, the burden has shifted to Plaintiffs as the party resisting arbitration or mediation to assert a reason that the Agreements are unenforceable. *Kennedy v. Equifax Info. Servs. LLC*, No. SA-23-CV-00470-FB, 2023 U.S. Dist. LEXIS 222967, at *3-4 (W.D. Tex. Dec. 13, 2023). Plaintiffs have failed to do so.

The Complaint is vague and devoid of allegations specifying, as to each individual Plaintiff, critical facts regarding their interactions with the Website, including whether they created an account and exactly when and how many times they visited the Website. Plaintiffs attempt to get around the Complaint's ambiguities and shift their burden back to Defendant by claiming, for the first time in the Response, that Defendant has the technology to know "precisely which pages were visited by users," "whether any actual terms were presented to these users," and "who, if anyone, actually assented to its TOU." (Response at 12-13). Plaintiffs then conclude that

Defendant's failure to provide evidence on these issues means that Defendant did not meet its burden of proof. (*Id.* at 13).

This argument fails for several reasons. First, as set forth above, the burden has shifted to Plaintiffs to show that the Agreements are unenforceable. The Court should reject Plaintiffs' tactic of making vague allegations regarding their use of the Website (when that knowledge is clearly within their possession), thereby impeding Defendant's ability to effectively investigate the allegations, and then baselessly arguing that these ambiguities should be held against Defendant.

Second, Plaintiffs' new allegations should be disregarded on the additional basis that they are conclusory and without merit. Plaintiffs assert that Defendant's use of "tracking tools" enables Defendant to know precisely which Plaintiffs have noticed or read the Agreements, among other things. (Response at 12-13). These assertions are as misguided as they are conclusory. Plaintiffs' argument is predicated on the bizarre concept that Defendant has the obligation and ability to configure its Website technology to connect anonymous online identifiers (like IP addresses or cookie IDs) to specific natural persons (such as the named Plaintiffs or any member of the putative class). Plaintiffs fail to explain how Defendant would have the ability to do this. For example, Defendant would need information from an Internet Service Provider to connect an IP address to a household or a figurative "name tag" to know that a browser identified by a cookie ID belongs to one of the Plaintiffs. [4]

---

[4] Internet Protocol (IP) addresses are assigned to Internet devices by Internet Service Providers (ISPs). Sometimes, ISPs assign the same IP address to a large number of computers. As a result, multiple computers may have identical IP addresses. (*See Google Ads Help*, GOOGLE, (lasted visited August 1, 2024), https://support.google.com/google-ads/answer/6322?hl=en). Cookies are tiny text files that are stored on a user's browser. Most cookies contain a unique identifier called a cookie ID: a string of characters that websites and servers associate with the browser on which the cookie is stored. This allows websites and servers to distinguish the browser from other browsers that store different cookies, and to recognize each browser by its unique cookie ID. (*How Google*

Bringing Plaintiffs' assertions back to their Complaint, the Facebook IDs that form the basis of Plaintiffs' allegations are stored on each Website user's computer and are sent directly from the visitor's computer to Meta. (Compl. ¶ 110). According to Plaintiffs, only Meta, not Defendant, has the capability of associating the Facebook IDs with a natural person. (Compl. ¶¶ 125-142). Therefore, Plaintiffs' searches and web-browsing activity as received by Defendant do not permit Defendant to identify natural individuals. However, as discussed below, even if taken as true, these new assertions do nothing to cut against enforceability of the mandatory mediation and arbitration terms.

**C. The Agreements Provided Sufficient Notice to Be Enforceable**.

Plaintiffs' argument that the Agreements are unenforceable because it is browsewrap is unavailing. Courts have found browsewrap agreements valid and enforceable so long as there is some form of "reasonably conspicuous" notice from the perspective of a "reasonably prudent [] user." *See Phillips v. Neutron Holdings, Inc.*, No. 3:18-CV-3382-S, 2019 U.S. Dist. LEXIS 171313, at *12 (N.D. Tex. Oct. 2, 2019); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018).

Contrary to Plaintiffs' argument, *Phillips* supports enforceability here. In *Phillips*, the hyperlinked terms of use were in "dark, bold font, making them stand out from both the white screen and the surrounding gray text." *Phillips*, 2019 U.S. Dist. LEXIS 171313, at *13; (Response at 7). The hyperlinks on the Website are similarly colored as those in *Phillips*: (i) both the Terms of Use and Privacy Policy are, and have been since at least January 1, 2018, presented in dark blue font against a white background (Motion, Ex. 7, Visionworks.com Home Page; Ex. A ¶¶ 10-12);

---

*Marketing Platform advertising products and Google Ad Manager use cookies*, GOOGLE, (lasted visited August 1, 2024), https://support.google.com/displayvideo/answer/2839090?hl=en).

(ii) when creating an account on the Website, the phrases "Terms of Use" and "Privacy Policy" are highlighted in the color red, juxtaposed against a white background and dark blue surrounding lettering (*Id.* at Ex. 6), and the then-applicable Website Terms and Website Privacy Policy are linked therefrom (*Id.* at Ex. A, ¶¶ 10-14). Accordingly, *Phillips* confirms that Plaintiffs were provided with sufficient notice of the Agreements.

None of the cases cited by Plaintiffs support their argument that the Agreements are unenforceable under these circumstances. Plaintiffs rely on *Kagan* to assert that browsewrap agreements with terms provided only at the very bottom of a webpage with no pop-ups informing users of terms are unenforceable. *U.S. Money Res., Inc. v. Kagan*, No. A-18-CV-577-LY, 2019 U.S. Dist. LEXIS 59438, at *11 (W.D. Tex. Jan. 29, 2019). However, in *Kagan*, the court found that the purchase agreement was already fully formed before the packing slips/invoices containing the arbitration provision were sent and thus the arbitration provision was a proposed additional term requiring the plaintiff's affirmative assent before becoming part of the agreement, which she did not provide. *Id.* at *8. By contrast, the mediation language at issue here is contained in the Agreements that were in place at the time Plaintiffs visited the Website, and therefore, Plaintiffs are bound by these terms.

Next, Plaintiffs cite several cases for the proposition that a link to a website's terms of use that is buried or hidden in a cluttered interface are unenforceable. (Response at 7-8) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-857 (9th Cir. 2022); *Sarchi v. Uber Techs., Inc.*, 2022 ME 8, ¶ 23, 268 A.3d 258, 267 (Me. 2022)). Plaintiffs' attempt to mischaracterize the Agreements as "buried" or "hidden" collapses upon examining the actual facts. For example, Plaintiffs state that the facts in *Berman* are similar to the facts here as the hyperlink in *Berman* appeared in small gray font, "rather

than in blue, the color typically used to signify the presence of a hyperlink." *Berman*, 30 F.4th at 849; (Response at 7-8). On the Website homepage, the hyperlink to the Agreements are in fact dark blue, not small gray font like in *Berman*. The hyperlinks also change colors and underline when moused-over. (Response at 4). Moreover, "[r]easonable notice does not turn on where the hyperlinked text falls on the color wheel; rather [courts] consider whether the text was conspicuous." *Selden v. Airbnb, Inc.*, 4 F.4th 148, 157 (D.C. Cir. 2021). Finally, hyperlinks to the Agreements are grouped together with only a few other hyperlinks, below and well away from the non-legal hyperlinks found on the Website homepage. (*See* Ex. 7).

As Plaintiffs have entered into a valid contract to mediate and do not dispute that their claims at issue are covered by the Agreements, this Court should order mediation.[5]

**D. The Claims of Absent Class Members Subject to Mandatory Arbitration Should be Stricken.**

Plaintiffs' proposed class definition contains no time frame/limitation on when the putative class members visited the Website. They purport to bring this class action on behalf of the following classes:

> Nationwide Class of Tracked Users: All persons in the United States whose searches and activity on the Website were intercepted, stored, and shared through the use of tracking tools (the "Class" or "Nationwide Class").
>
> Pennsylvania Subclass of Tracked Users: All persons in Pennsylvania whose searches and activity on the Website were intercepted, stored, and shared through the use of tracking tools (the "Pennsylvania Class").

(Compl., ¶ 168).

[5] Plaintiffs' Response includes a footnote stating that "on June 25, 2024" they "initiated mediation proceeding on behalf of 254 additional Website users" based on the Terms of Use. (Response at 10, fn. 2). Yet, Plaintiffs still maintain that the Agreements are unenforceable against the named Plaintiffs.

The Feb. 2024 Terms, effective February 22, 2024, require mandatory arbitration and include a class action waiver. Rather than attacking the enforceability of this provision, Plaintiffs simply state that the issue may go to the class definition during the class certification phase. (Response at 9). However, the claims of unnamed plaintiffs subject to mandatory arbitration are not viable and should be dismissed now. *See* Fed. R. Civ. P. 23(d)(1)(D) ("In conducting an action under this rule, the court may issue orders that: … (D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."); *Forby v. One Techs., LP*, No. 3:16-CV-856-L, 2020 U.S. Dist. LEXIS 128913, at *31 (N.D. Tex. July 22, 2020) (granting defendant's motion to strike class allegations because the putative class members were bound by an arbitration clause); *Kay v. Wells Fargo & Co. N.A.*, No. C 07-01351 WHA, 2007 U.S. Dist. LEXIS 55519, at *16 (N.D. Cal. 2007) (granting defendant's motion to strike certain class allegations related to putative class members before class certification).

## III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs have failed to carry their burden of demonstrating that the Agreements, and the mandatory mediation and arbitration terms contained therein, are unenforceable. Plaintiffs have pleaded that they took notice and relied upon the Agreements when using the Website, so they should be compelled to comply with the terms of those Agreements, just as they are seeking to enforce those Agreements against Defendant.

Dated: August 5, 2024

Respectfully submitted,

VISIONWORKS OF AMERICA, INC.

By: /s/ *J. Daniel Harkins*
One of Its Attorneys

DYKEMA GOSSETT PLLC
J. Daniel Harkins
*dharkins@dykema.com*
112 Pecan St., Ste. 1800
San Antonio, TX 78205
Tel: (210) 554-5500
Fax: (866) 219-7593

Cinthia Granados Motley (*pro hac vice*)
*cmotley@dykema.com*
10 S. Wacker Dr., Ste. 2300
Chicago, IL 60606
Tel.: (312) 876-1700
Fax: (312) 876-1155

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 5, 2024.

By: /s/ *J. Daniel Harkins*

One of Defendant's Attorneys