**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SAURAV SHARMA, DIANE YOUNG, | § | |
| JAIME STIEVE, and GEORGE DEAN, | § | |
| On Behalf of Themselves and All Others | § | |
| Similarly Situated, | § | |
| | § | CASE NO. 5:24-cv-00206-FB |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| VISIONWORKS OF AMERICA, INC., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT VISIONWORKS OF AMERICA, INC.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS


**I. ARGUMENT** ........ 1

**A. Plaintiffs Concede That They Have Not Pleaded Key Facts to State Their Claims**. 1

**B. Plaintiffs Have Conceded that Plaintiffs Sharma's and Dean's Wiretapping and Intrusion Upon Seclusion Claims are Barred by the Statute of Limitations**. ........ 1

**C. The Disclosed Information is Not Plaintiffs' IIHI or PHI**. ........ 2

**D. Plaintiffs Do Not Have Article III Standing**. ........ 4

**E. Plaintiffs Have Not Alleged a "Highly Offensive" Intrusion to Support Their Intrusion Upon Seclusion Claims**. ........ 6

**F. If HIPAA is Applicable, Plaintiffs' State Law Claims Are Preempted**. ........ 7

**G. Plaintiffs Have Not Adequately Pled Claims Under the Federal Wiretap Act and the State Wiretap Acts**. ........ 7

***1. As Pleaded by Plaintiffs, Defendant Is A Party To The Communication To Meta And Therefore Plaintiffs' Federal Wiretap Act and Texas Wiretap Act Fail*** ........ 7

***2. The Crime-Tort Exception Does Not Apply Because Plaintiffs Have Failed to Allege An Independent Act*** ........ 8

***3. Plaintiffs' WESCA Claim Fails Because No Interception Was Pled*** ........ 9

**H. Plaintiffs Fail To Adequately Allege A Breach of Implied Contract**. ........ 9

**II. CONCLUSION** ........ 100

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acara v. Banks*,
470 F.3d 569 (5th Cir. 2006) ....................7

*Am. Hosp. Ass'n v. Becerra*,
No. 4:23-cv-01110-P, 2024 U.S. Dist. LEXIS 108847, at *6-7, 33-44 (N.D. Tex. June 20, 2024) ....................3

*Brown v. Learfield Commc'ns, LLC*,
No. 1:23-CV-00374-DAE, 2024 U.S. Dist. LEXIS 113441 (W.D. Tex. June 27, 2024)......8, 9

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................5

*Freier v. Colorado*,
804 F. App'x 890 (10th Cir. 2020) ....................7

*Funeral Consumer Alliance, Inc. v. Serv. Corp. Int'l*,
695 F.3d 330 (5th Cir. 2012) ....................6

*Horton v. M&T Bank*,
No. 4:13-CV-525-A, 2013 U.S. Dist. LEXIS 166772 (N.D. Tex. Nov. 22, 2013) ....................1

*In re Google Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................8

*Kirsten v. Cal. Pizza Kitchen, Inc.*,
No. 2:21-CV-09578-DOC-KES, 2022 U.S. Dist. LEXIS 206552, at *2 (C.D. Cal. 2022) ....................10

*Petris v. Sportsman's Warehouse, Inc.*,
No. 2:23-cv-1867, 2024 U.S. Dist. LEXIS 98123 (W.D. Pa. June 3, 2024) ....................5

*Plotkin v. Joekel*,
304 S.W.3d 455 (Tex. App.—Houston [1st Dist.] 2009) ....................10

*Popa v. PSP Grp., LLC*,
No. C23-0294JLR, 2023 U.S. Dist. LEXIS 191053 (W.D. Wash. Oct. 24, 2023)................5, 6

*Scanlan v. Tex. A & M Univ.*,
343 F.3d 533 (5th Cir. 2003) ....................1

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................5

*Tex. Capital Bank N.A. v. Dallas Roadster, Ltd.*,
846 F.3d 112 (5th Cir. 2017)....................2

*TransUnion, LLC v. Ramirez*,
594 U.S. 413 (2021)....................4, 5, 6

*Walters v. Blue Cross & Blue Shield of Tex., Inc.*,
No. 3:21-CV-981-L, 2022 U.S. Dist. LEXIS 55061 (N.D. Tex. 2022)....................6

**REGULATIONS**

45 CFR § 160.103....................3

**STATUTES**

18 Pa.C.S. § 5702....................9

42 U.S.C. § 1320d–6....................3, 9

**OTHER AUTHORITIES**

*Privacy Rule*, HHS (last visited on August 2, 2024),
https://www.hhs.gov/hipaa/for-professionals /privacy/index.html#:~:text=The%20HIPAA%20Privacy%20Rule%20establishes,care%20providers%20that%20conduct%20certain....2

# I. ARGUMENT

## A. Plaintiffs Concede That They Have Not Pleaded Key Facts to State Their Claims.

Throughout Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss (Dkt. No. 22, the "Response"), they attempt to improperly support their deficient claims by stating that, given the opportunity to amend their Complaint, Plaintiffs can provide additional facts or information. For example, Plaintiffs state that they purportedly:

- "[C]an provide additional, sensitive details about their doctor visits, and any services or products searched for or obtained";
- "[C]ould also add allegations that they would continue to use the Website if their sensitive information is no longer shared with third parties";
- "Plaintiff Sharma could add allegations stating that he visited Defendant's Website in late March 2022 and he booked an eye exam appointment with a doctor. Plaintiff Sharma then attended the eye exam approximately two weeks later, on April 12, 2022. Upon completion of the eye exam, Plaintiff Sharma returned to Defendant's Website to browse the Website's collection of prescription products"; and
- "Plaintiff Sharma could also add allegations stating that he would continue to use the Website if his sensitive information is no longer shared with third parties."

(Response, p. 8, fn. 9). Yet, these allegations are absent from the Complaint. Plaintiffs' attempt to buttress the Complaint's deficiencies by citing new facts for the first time in their Response must be rejected. *See Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (in deciding a motion to dismiss, a district court may generally not "go outside the complaint"); *Horton v. M&T Bank*, No. 4:13-CV-525-A, 2013 U.S. Dist. LEXIS 166772, at *19 (N.D. Tex. Nov. 22, 2013) ("Plaintiffs cannot amend their complaint by allegations raised in response to a motion to dismiss."). By attempting to improperly interject new facts via their Response, Plaintiffs concede that they have failed to make sufficient allegations in the Complaint itself to support their claims.

## B. Plaintiffs Have Conceded that Plaintiffs Sharma's and Dean's Wiretapping and Intrusion Upon Seclusion Claims are Barred by the Statute of Limitations.

Notably, Plaintiffs failed to respond to Defendant's argument that Plaintiffs Sharma's and Dean's claims under the Federal Wiretap Act, WESCA, Texas Wiretap Act and for intrusion upon seclusion are barred by their two-year statutes of limitations. (Defendant's Motion to Dismiss, Dkt. No. 13 (the "Motion"), pgs. 14-15).[1] Therefore, Plaintiffs have waived this argument and the Court should dismiss these claims as they relate to Plaintiffs Sharma and Dean. *Tex. Capital Bank N.A. v. Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (plaintiff's failure to address arguments constituted abandonment of the claim).

**C. The Disclosed Information is Not Plaintiffs' IIHI or PHI.**

Plaintiffs allege that the Meta Pixel sent Plaintiffs' "searches and activity" on the Website to Meta and "when [Plaintiffs] click on specific items on the Website, detailed descriptions of each item are shared with [Meta], including details about health articles, scheduled eye exams, and prescription products." (Complt. ¶¶ 3-4).[2] Plaintiffs then make a leap to say this information rises to the level of "protected private health information" subject to protection under HIPAA. (Complt. ¶ 5). The HIPAA Privacy Rule establishes national standards to protect individuals' medical records and other individually identifiable health information (collectively defined as "protected health information").[3] HIPAA defines individually identifiable health information ("IIHI") as HIPAA protected health information ("PHI") that (1) "relates to" an individual's healthcare and (2) "identifies the individual" or provides "a reasonable basis to believe that the information can

---

[1] All defined terms used herein as the same as those set forth in the Motion unless otherwise specified.

[2] Defendant disagrees with Plaintiff's characterization that "detailed descriptions" are shared with Meta. However, even taking these allegations as true for the purposes of the Motion, this information is not IIHI or PHI.

[3] *The HIPAA Privacy Rule*, HHS (last visited on August 2, 2024), available at https://www.hhs.gov/hipaa/for-professionals/privacy/index.html#:~:text=The%20HIPAA%20Privacy%20Rule%20establishes,care%20providers%20that%20conduct%20certain.

be used to identify the individual." 45 CFR § 160.103. The information alleged to be disclosed regarding Plaintiffs does not meet this standard.

Plaintiffs' claims were fatally undercut on June 20, 2024[4] when the Northern District of Texas vacated and declared unlawful the portion of the most recent Guidance from the U.S. Department of Health and Human Services ("HHS") relied on by Plaintiffs' in their Complaint (¶¶ 41–45) and Response (pgs. 6, 9-10). In *Am. Hosp. Ass'n v. Becerra*, the court held that HHS's "Proscribed Combination," which is defined as "circumstances where an online technology connects (1) an individual's IP address with (2) a visit to a UPW [unauthenticated public webpage] addressing specific health conditions or healthcare providers," does not fit the statutory definition of IIHI subject to the HIPAA Privacy Rule. No. 4:23-cv-01110-P, 2024 U.S. Dist. LEXIS 108847, at *6-7, 33-44 (N.D. Tex. June 20, 2024). In other words, contrary to the HHS' guidance, the Proscribed Combination would not be prohibited from disclosure under 42 U.S.C. § 1320d–6. *Id.* at *33-44. In finding that the HHS overstepped its statutory purview with its guidance, the court held that the Proscribed Combination does not "relate to" an individual's healthcare because the connection necessarily hinges on an "unknowable subjective-intent element," *i.e.*, the specific reason why the individual is querying the website. *Id.* at *40. "Thus, without *knowing* a particular query relates to a category of information in Section 1320d(6), metadata from a UPW search cannot constitute IIHI." *Id.* at *39 (emphasis original). HHS's "Proscribed Combination" also failed to sufficiently "identify" the individual. "IIHI is limited to information that is related to a specific person's health and [is] reasonably capable of being used to identify *that person*—such

[4] Defendant notes that it could not have cited this authority in its Motion, which was filed on May 29, 2024. (Dkt. No. 13). However, Defendant's argument that the information allegedly disclosed to Meta is not PHI is well established in Motion. (*Id.*, pgs. 9-11). Plaintiffs dropped a footnote referencing the *AHA* decision, but limited their discussion to stating that the court "agrees the guidance was final agency action and carries legal ramifications." (Response, pg. 10, fn. 11).

as, for example, unredacted patient records or billing statements . . . the closest the Proscribed Combination gets to IIHI is a speculative inference extrapolated from (but unsubstantiated by) collected metadata." *Id.* at *40, 44 (emphasis in original).

In this case, Plaintiffs' claims are based upon their own iteration of the "Proscribed Combination." Plaintiffs are alleging that the combination of (1) a unique online identifier (Facebook ID) and (2) a visit to the Website to review health articles, schedule eye exams, and research prescription products, results in IIHI (and therefore PHI). It does not. As stated by the *AHA* court: "Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)." *Id.* at *43. At most, the disclosure of Plaintiffs' activity on the Website could potentially allow speculation about their healthcare, but *AHA* has made clear that this is insufficient. Even entirely disregarding *AHA*, according to Plaintiffs only Meta, not Defendant, has the capability of associating the Facebook IDs with a natural person. (Complt. ¶¶ 125-142). Therefore, Plaintiffs' searches and web-browsing activity as received by Defendant do not rise to the level of IIHI.

**D. Plaintiffs Do Not Have Article III Standing**.

Next, Plaintiffs' argument that dissemination of their information to Meta alone constitutes a concrete harm is contrary to the Supreme Court's standing analysis in *TransUnion, LLC v. Ramirez,* 594 U.S. 413 (2021). *TransUnion* states that:

> To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing. Central to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including reputational harm.

*Id.* at 417. Here, Plaintiffs have failed to meet their burden of alleging concrete harm falling within the *TransUnion* analysis. Plaintiffs allege that disclosure of Plaintiffs' "searches and activity" on the Website were for advertising purposes. (Complt. ¶ 8-9). The information transmitted to Meta

is not alleged to have caused any physical or monetary harm and Plaintiffs failed to allege anything resembling recognized intangible harms, such as reputational impact or disclosure to a threat actor.

Plaintiffs instead have relied entirely upon supposed violations of state and federal law, which the Supreme Court has clearly cautioned is not enough to establish standing in federal court. *TransUnion*, 594 U.S. at 426 ("Importantly, this Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right' . . . Article III standing requires a concrete injury even in the context of a statutory violation.") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Therefore, Plaintiffs fail to allege an injury in fact. Without an injury in fact, there can be no redress.

The cases cited by Plaintiffs to support standing are inapposite. *Petris v. Sportsman's Warehouse, Inc.*, No. 2:23-cv-1867, 2024 U.S. Dist. LEXIS 98123 (W.D. Pa. June 3, 2024) centers around firearm purchase information and is premised upon claims under the WESCA and the Firearms Act. The firearm purchase information in *Petris* is a world apart from the eye-glasses related metadata at issue in this case. *Id.* at *3. Importantly, the defendant in *Petris* was alleged to have disclosed this firearm purchase information along with the plaintiff's name and address to Facebook. *Id.* Here, Plaintiffs only allege disclosure of Facebook IDs connected with eye glass searches, health articles and vision appointments; hardly the level of identification, disclosure, or potential harm contemplated by the *Petris* court.

Plaintiffs also cite *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017), the validity of which was questioned in *Popa v. PSP Grp., LLC*, No. C23-0294JLR, 2023 U.S. Dist. LEXIS 191053 (W.D. Wash. Oct. 24, 2023). The court in *Popa* noted that *Eichenberger* pre-dated the Supreme Court's 2021 decision in *TransUnion* and soundly rejected the plaintiff's argument that

statutes protecting privacy interests, such as anti-wiretapping and anti-disclosure laws, "codify a substantive right to privacy and thus the violation of such statutes necessarily gives rise to a concrete injury sufficient to confer standing." *Popa*, 2023 U.S. Dist. LEXIS 191053, at *13. Because Plaintiffs are also solely relying upon violations of privacy laws[5] to support their claims, they too fail to achieve Article III standing. Further, Plaintiffs' reliance on *Perry v. Cable News Network, Inc.* is misplaced as it pre-dates *TransUnion* and involved an alleged violation of the Video Privacy Protection Act, which is not at issue here.

Plaintiffs' Response fails to address the critical flaw in their pleading for injunctive relief: they have not demonstrated "either continuing harm or a real and immediate threat of repeated injury in the future." *Funeral Consumer Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 342 (5th Cir. 2012). The Complaint contains no allegations of continuing harm and Plaintiffs' attempt to shoehorn in the self-serving statement that "Defendant's Website calls for and encourages recurring business and repeat customers" through their Response fails to meet this standard, even if properly presented to the Court (which it is not). (Response, pg. 8). Based on the foregoing, Plaintiffs have not and cannot satisfy the threshold issue of Article III standing, and the Court should dismiss the Complaint in its entirety.

### E. Plaintiffs Have Not Alleged a "Highly Offensive" Intrusion to Support Their Intrusion Upon Seclusion Claims.

As discussed above, the eyeglass related metadata provided to Meta does not rise to the level of HIPAA IIHI or PHI, and Plaintiffs have not plead any facts to suggest that the disclosure of their eyeglass related metadata to Meta would be "highly offensive" to a reasonable person. *Walters v. Blue Cross & Blue Shield of Tex., Inc.*, No. 3:21-CV-981-L, 2022 U.S. Dist. LEXIS

[5] Plaintiffs' breach of contract claims are also premised on privacy violations.

55061, at *10 (N.D. Tex. 2022) ("Even construing the Complaint in the light most favorable [to] Plaintiff, the case law does not support a contorted view that disclosure of medical records to a third party qualifies as an act of intrusion, even though the disclosure exceeded prior authorization.").

**F. If HIPAA is Applicable, Plaintiffs' State Law Claims Are Preempted**.

In their Response, Plaintiffs mischaracterize Defendant's position as well as their own. Defendant's position is that HIPAA does not provide a baseline privacy standard for Plaintiffs' claims because the data alleged to be disclosed to Meta is not IIHI or PHI. (Motion, pgs. 9-11). Alternatively, and only if HIPAA is deemed to apply to the disclosure, does Defendant argue that HIPAA preempts Plaintiffs' state law claims. (Motion, pg. 10). Conversely, Plaintiffs stake their case upon the application of HIPAA's protections to the data disclosed to Meta. (*See, e.g.*, Complt. ¶¶ 38-45, 64-65; Response, pgs. 17-19). Plaintiffs' attempts to manipulate HIPAA to fuel their state and common law claims frustrates the clear Congressional intent behind HIPAA to exclude a private cause of action. HIPAA limits enforcement to the Secretary of the Department of Health and Human Services and state attorneys generals. *See Freier v. Colorado*, 804 F. App'x 890, 892 (10th Cir. 2020). The Fifth Circuit has reasoned that this specific delegation of enforcement clearly indicates that Congress did not intend to create a private remedy. *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006). Plaintiffs' end-run to fashion their own personal HIPAA cause of action is contrary to this purpose and contrary to HIPAA, and therefore invites preemption.

**G. Plaintiffs Have Not Adequately Pled Claims Under the Federal Wiretap Act and the State Wiretap Acts**.

***1. As Pleaded by Plaintiffs, Defendant Is A Party To The Communication To Meta And Therefore Plaintiffs' Federal Wiretap Act and Texas Wiretap Act Fail***

Plaintiffs try to have it both ways by alleging that Defendant knowingly and intentionally allowed Meta to "intercept" Plaintiffs' communications to Defendant (*see, e.g.*, Complt. ¶¶ 197, 201, 229, 231) while at the same time claiming that Defendant was not a party to the communication because Meta did not consent to the use of the pixel "to intercept sensitive or legally protected health-related information." (Response, pg. 13). The latter argument is a non-sequitur. The standard turns on whether *Defendant* consented to the recording, not Meta. Plaintiffs themselves have pleaded Defendant's consent to the "interception." (Complt. ¶¶ 82-83).

A party to a communication cannot unlawfully "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. *Brown v. Learfield Commc'ns, LLC*, No. 1:23-CV-00374-DAE, 2024 U.S. Dist. LEXIS 113441, at *9 (W.D. Tex. June 27, 2024). In football terms (as the analogy is used in *Brown*, which involved both the ECPA and the Federal Wiretap Act), "it is impossible for Cowboys Wide Receiver CeeDee Lamb to intercept a ball thrown by his own quarterback i.e. Dak Prescott. Someone else on the defense (for instance, Eagles Cornerback James Bradberry) would have to intercept the pass." *Id.* at *10; *see also In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015) (dismissing Wiretap Act claim because tracking cookies placed by advertising providers made the advertiser the intended recipient of the electronic transmission).

***2. The Crime-Tort Exception Does Not Apply Because Plaintiffs Have Failed to Allege An Independent Act***

Plaintiffs' Response completely ignores the critical flaw in its Federal Wiretap Act and Texas Wiretap Act claims: the crime-tort exception does not apply to the alleged interception itself. While not universally applied among federal courts, the Fifth Circuit follows *In Re Google Cookie Placement Consumer Priv. Litigation* and requires a purpose of committing a criminal or tortious act that is independent of the alleged interception itself. *Brown*, 2024 U.S. Dist. LEXIS 113441,

at *11-13. Even if HIPAA is construed to apply to the alleged disclosure of information to Meta, Plaintiffs have arguably plead a violation of 42 U.S.C. § 1320d–6 ("Wrongful disclosure of individually identifiable health information"), which criminalizes the improper *disclosure* of IIHI. This is the exact same act underlying Plaintiffs' Federal Wiretap Act and Texas Wiretap Act claims. Therefore, a violation of 42 U.S.C. § 1320d–6 is a simultaneous tort arising from the act of disclosure itself and is unusable for the crime/tort exception. Plaintiffs' other state and common law claims are all similarly predicated on the allegedly improper act of disclosure only.

#### ***3. Plaintiffs' WESCA Claim Fails Because No Interception Was Pled***

Under Pennsylvania's WESCA, "intercept" is defined as the "aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa.C.S. § 5702. Plaintiffs have not alleged an "interception" by Meta, but rather pleaded two separate communications: (1) between Plaintiffs' devices and Defendant's servers; and (2) between Plaintiffs' devices and Meta's servers. (Compl. ¶ 110) (explaining how the pixel causes the "user's computer" to duplicate Facebook IDs and data, inserts that information into a HTTP Request and sends it directly to www.facebook.com/tr). Therefore, Plaintiffs do not allege that Meta "intercepts" Plaintiffs' communications with Defendant, but rather creates a separate communication to Meta. Returning to the football analogy used in *Brown*, Plaintiffs allege there are two balls thrown to two separate receivers, not that a single ball is thrown to a single receiver with that ball intercepted in transit. The former is not an "interception," and therefore Plaintiffs' WESCA claim fails.

### H. Plaintiffs Fail To Adequately Allege A Breach of Implied Contract.[6]

[6] In the Response, Plaintiffs state that they "concede for the purposes of the motions before the Court as to named Plaintiffs, than an actual contract (as opposed to implied contract) does not exist." (Response, pg. 19).

The elements of a contract, express or implied, are identical. *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App.—Houston [1st Dist.] 2009). These elements are an offer, an acceptance, a meeting of the minds, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutually binding. *Id*. Here, Plaintiffs have failed to plead facts which suggest a "meeting of the minds" or a mutual understanding regarding the material terms of an implied contract. Plaintiffs' Response argues that the receipt of private information creates an "implied promise" not to disclose it (Response, pg. 20), but this argument fails for two reasons.

First, Plaintiffs misstate the legal analysis: some courts have found that the *mandatory* receipt of PII implies the recipient's assent to protect the PII sufficiently. For example, in *Kirsten v. Cal. Pizza Kitchen, Inc.*, cited by Plaintiffs, the plaintiffs had an employment relationship with the defendant, mandating that they provide their Social Security numbers, birthdates, and financial information to the defendant. No. 2:21-CV-09578-DOC-KES, 2022 U.S. Dist. LEXIS 206552, at *2 (C.D. Cal. 2022). This concept is simply inapplicable to the present case. Defendant provided the Website with a search bar, which would receive any data freely provided by the visitor. Plaintiffs have not plead (nor could they) that Defendant mandated the disclosure of any particular piece of information, let alone IIHI or PHI, such that Defendant has an implied contractual obligation to protect it. Second, Defendant did not disclose any private information (or any information at all) to Meta in violation of this implied "contract." As pleaded by Plaintiffs, the Plaintiffs' own computers transmitted the alleged information directly to Meta. (Complt. ¶ 110).

## II. <u>CONCLUSION</u>

For the reasons set forth above, this Court should dismiss Plaintiffs' Class Action Complaint in its entirety, with prejudice.

Dated: August 5, 2024

Respectfully submitted,
VISIONWORKS OF AMERICA, INC.

By: s/*J. Daniel Harkins*_______
One of Its Attorneys

DYKEMA GOSSETT PLLC
J. Daniel Harkins
*dharkins@dykema.com*
112 Pecan St., Ste. 1800
San Antonio, TX 78205
Tel: (210) 554-5500
Fax: (866) 219-7593

Cinthia Granados Motley (*pro hac vice*)
*cmotley@dykema.com*
10 S. Wacker Dr., Ste. 2300
Chicago, IL 60606
Tel.: (312) 876-1700
Fax: (312) 876-1155

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 5, 2024.

By: /s/ *J. Daniel Harkins*

One of Defendant's Attorneys